[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 23, 2011
JOHN LEY
CLERK

_____

No. 09-14311

_____

D.C. Docket No. 08-23487-CV-PCH

PABLO SAN MARTIN,

Petitioner-Appellant,

versus

SECRETARY WALTER A. MCNEIL,
Florida Department of Corrections,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 23, 2011)

Before TJOFLAT, BLACK and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

Petitioner Pablo San Martin, a Florida inmate, appeals a decision of the

district court dismissing as time-barred his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. San Martin was sentenced to death in state court following his convictions for one count of first-degree murder, two counts of attempted first-degree murder with a firearm, one count of attempted robbery with a firearm, two counts of grand theft, and one count of unlawful possession of a firearm while engaged in a criminal offense. In this appeal, San Martin argues that because there was a two-week delay in his receipt of actual notice of a United States Supreme Court order triggering the commencement of the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 et seq., the district court erred in not applying equitable tolling. We disagree. San Martin's petition was untimely. The district court squarely found neither diligence nor extraordinary circumstances to justify equitable tolling. Because we can discern no error, let alone clear error in these factual determinations, we affirm.

## I.

The facts of the crime -- an armed robbery that resulted in the murder of Raul Lopez, who had been accompanying friends during their weekly bank trip for their check-cashing business -- are detailed at length in an opinion by the Florida Supreme Court, which affirmed San Martin's convictions and death sentence on

2

direct appeal.  See San Martin v. State, 705 So. 2d 1337 (Fla. 1997) (per curiam).[1]

While the facts surrounding the murder are not relevant here, the subsequent

procedural history of the case is.

Following his direct appeal, San Martin, through counsel, sought certiorari

review of the Florida Supreme Court's opinion in the United States Supreme

Court.  The Supreme Court denied San Martin's petition for writ of certiorari on

October 5, 1998, thereby concluding direct review of Petitioner's convictions and

sentence.  San Martin v. Florida, 525 U.S. 841 (1998).  Post-conviction counsel

was appointed for San Martin on February 11, 1999.

On October 4, 1999, 363 days after the judgment became final on direct

review, San Martin filed a shell motion for post-conviction relief in state court,

which was permissible under Florida law at the time.  In the shell motion,

Petitioner admitted that he was filing the motion to toll the federal habeas statute of

limitations, claimed that his counsel was overworked, listed a series of claim

_____

[1] Stated briefly, the murder occurred when Raul Lopez was driving behind his friends, Danilo Cabanas Sr. and Danilo Cabanas Jr.  After the threesome left the bank with the weekly cash withdrawal, the two cars were "boxed in" at an intersection by two Chevrolet Suburbans. Two masked men (which San Martin later admitted were him and co-defendant Pablo Abreu) exited from the front Suburban and began shooting at the Cabanases, and one masked person exited the rear Suburban.  When Cabanas Sr. returned fire, the assailants returned to their vehicles and fled.  After the gunfire, Lopez was found outside his vehicle with a bullet wound in his chest, and died shortly thereafter.

headings, said that his counsel was not prepared to raise the claims, and signed the attached verification.

On April 8, 2000, San Martin filed a proper motion for post-conviction relief, raising thirty claims. Among other things, he argued that: (1) his counsel had been ineffective for preventing him from testifying at the guilt and penalty phases; (2) he presented newly-discovered/Brady[2] evidence in the form of an affidavit from co-defendant Abreu recanting trial testimony and indicating that San Martin had not known beforehand of any plans to kill Lopez, and that prosecutors had threatened Abreu with the death penalty if he did not testify that San Martin knew of the plans to kill Lopez; and (3) Abreu's affidavit established that San Martin was innocent of first-degree murder and the death penalty.

The state post-conviction court granted an evidentiary hearing on San Martin's claim that counsel was ineffective because he prevented Petitioner from testifying and on the newly-discovered evidence and Brady claims based on Abreu's affidavit. The court denied most of San Martin's remaining claims summarily. In rejecting the innocence claim, the court held that Abreu's affidavit did not change the fact that San Martin was guilty of felony murder, and therefore

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

of first-degree murder, nor did it show that each of the aggravators the trial court had found in imposing the death penalty were invalid.[3]

Following the evidentiary hearing, the court denied San Martin's motion in full.[4] Petitioner appealed the denial of his post-conviction motion to the Florida Supreme Court, raising various arguments -- (1) the trial court erred in denying summarily twenty-seven of the claims San Martin had raised in his amended

---

[3] In imposing the death sentence, the trial court found three aggravating circumstances beyond a reasonable doubt: (1) San Martin had prior violent felony convictions for armed robbery and armed kidnaping and for attempted first-degree murder and attempted robbery; (2) the Lopez murder was committed during the course of an attempted robbery and for pecuniary gain (which was merged into one aggravating circumstance); and (3) the Lopez murder was committed in a cold, calculated, and premeditated manner. See Fla. Stat. § 921.141(5)(b), (d), (f), (i) (1995). As for his first prior conviction, San Martin had been involved in the armed robbery and kidnaping of Craig Van Nest, who had been driving an auto parts van when San Martin and two others stole the van by hitting Van Nest over the head with a pistol and pushing him into the van the assailants were driving. As for the second, San Martin and two others stole a car as a heist vehicle to rob a security guard carrying a cash bag near a bank, and during the course of the attempted robbery, San Martin threatened and fired upon the guard.

[4] At the hearing, Abreu testified regarding his affidavit. He said that he speaks little English and cannot read or write English, and that he believed the affidavit he had signed was a declaration that he was not the killer because he did not fire the shot that killed Lopez. Abreu further testified that no one threatened him with the death penalty or forced him to answer questions in a particular way, that the prosecutors did not tell him to testify that San Martin knew someone was going to get killed, and that his testimony and conversations with prosecutors have at all times been truthful. Finally, Abreu unambiguously testified that the plan to kill Lopez was first discussed on the morning of the incident.

Based on this testimony, the court specifically found that San Martin had failed to prove any element of his claims based on the Abreu affidavit. Among other things, the trial court found that San Martin had failed to establish that the State had knowingly forced Abreu to present perjurious testimony to the jury, because any inconsistency in Abreu's testimony -- whether the plan to kill Lopez was discussed days before or on the morning of the murder -- was insufficient to show the testimony was false. It further found that regardless of when the plan was discussed, the time was more than sufficient to support the cold, calculated, and premeditated aggravating circumstance.

5

motion for post-conviction and/or collateral relief, without determining the sufficiency of the pleading on its face and without permitting an evidentiary hearing or an opportunity to make a record for review; and (2) the trial court erred in denying San Martin's newly-discovered evidence claim since the court's reading of the penalty phase testimony of co-defendant Abreu was factually wrong. On August 28, 2008, the Florida Supreme Court affirmed the trial court's denial of post-conviction relief. San Martin v. State, 995 So. 2d 247 (Fla. 2008) (per curiam).[5] The mandate issued on December 3, 2008.

San Martin filed this federal petition for writ of habeas corpus in the United States District Court for the Southern District of Florida on December 18, 2008. He raised five claims.[6] The petition made no mention of whether it was filed

---

[5] In particular, the Florida Supreme Court expressly found, among others, that "[a]ny difference between Abreu's trial testimony and his postconviction testimony concerns only the time when San Martin and Abreu became aware of the plan to kill Lopez." San Martin, 995 So. 2d at 254. The court explained that even considering Abreu's "new" testimony, San Martin and Abreu were aware of the plan before it was executed; the only question was whether they learned of the plan thirty minutes to a few hours before the ambush, or days before. Id. However, the court determined that "this inconsistency was present within Abreu's trial testimony itself," and his testimony therefore was not false. Id. The Florida Supreme Court further concluded that "[t]he difference in timing makes no material difference . . . [and] there is no reasonable possibility that it could have affected the outcome of the proceeding." Id.

[6] San Martin alleged that: (1) he was actually innocent because, among other things, the State presented false or misleading testimony and withheld evidence that was favorable to Petitioner; (2) his lawyer during the guilt phase was ineffective by failing to cross-examine the co-defendant and other witnesses, failing to challenge the pre-arrest procedure, failing to present evidence of Petitioner's impediments in waiving his Miranda rights, failing to present a coherent defense of Petitioner's coerced confession, failing to object, preventing Petitioner from testifying in his own defense, and committing individual and cumulative errors; (3) his lawyer during the penalty phase was ineffective by failing to conduct a reasonable investigation into Petitioner's

6

timely. However, complying with the district court's order for the State to respond, the State argued that the petition should be dismissed because it was time-barred. The State also argued that the claims were unexhausted, procedurally barred, insufficiently pled, and without merit.

In reply, Petitioner never admitted that his petition was untimely, nor did he request equitable tolling. Rather, he recognized that the Supreme Court had denied his certiorari petition on October 5, 1998, but claimed that "this fact was [not] recorded and notified to Petitioner until October 19th, 1998, when it was recorded for record with the clerk of Court's [sic] of the Florida Supreme Court." He further said that he did not have counsel or "contact with the Court of appeals" until well after that date. San Martin also argued that "the time period at issue is also covered by the tolling of limitations period that affected Florida in due [sic] to hurricane Floyd, which struck on September 14th, 1999, resulting in a two day tolling of limitations." Finally, he claimed that an affidavit by a co-defendant showed that he had a strong claim of actual innocence.

---

background, failing to adequately prepare and present a cohesive psychological theory, failing to present a clinical social worker, allowing the trial court to operate under a presumption of death, and having a conflict of interest with Petitioner; (4) his post-conviction motion was not adequately considered by the state courts; and (5) he was sentenced under an unconstitutional death penalty scheme.

The district court ordered the parties to address the impact of Hollinger v. Sec'y Dep't of Corr., 334 F. App'x 302 (11th Cir. 2009) (per curiam) (unpublished), on the timeliness of the petition, "including whether an evidentiary hearing is required on the question of Petitioner's diligence." In response, the State argued that Hollinger did not affect the timeliness of the petition, particularly since San Martin had not actually requested equitable tolling or pleaded its requirements in any way.

San Martin insisted that his petition was filed before the statute of limitations expired. He also argued that even if he needed to employ equitable tolling, he was entitled to it because of the alleged late notice of the Supreme Court's order denying certiorari and the "late" appointment of post-conviction counsel. As for diligence, he simply said that "the lower Court's delay in it's [sic] receipt of the Supreme Court's decision, together with the lower Court's delay in appointment of counsel, clearly affected the diligence with which this case was prosecuted."

On August 13, 2009, the district court denied the habeas petition as time-barred. See Doc. 25.[7] The court determined that the petition was untimely because under the statute of limitations, the petition was due by December 5, 2008, but was

_____

[7] References to documents in the district court docket are referenced by the docket number, followed by page number (e.g., "Doc. 25-1").

not filed until December 18, 2008. Doc. 25-6-7. The district court noted that San Martin had only mentioned equitable tolling in response to the court's order for supplemental briefing, but decided anyway to construe San Martin's statements concerning when he was notified of the Supreme Court's certiorari ruling, the "late" appointment of post-conviction counsel, and Hurricane Floyd as amounting to a request for equitable tolling. Doc. 25-7.

Addressing first the "delayed" notice of the Supreme Court's certiorari ruling, the district court found that while this kind of delay may have been an adequate ground for equitable tolling in other cases, "those cases have extreme facts and involve petitioners that exhibit much greater diligence than this Petitioner has shown." Doc. 25-9. Comparing this case with others, the district court found that "the Petitioner showed no diligence in either ascertaining the status of the U.S. Supreme Court's order or attempting to promptly proceed with his motion for post-conviction relief." Doc. 25-12.

In addition, the district court also found that: (1) "the Petitioner's situation was not 'extraordinary'"; (2) "[t]he Petitioner submitted no evidence supporting his position that the two-week delay in receiving the U.S. Supreme Court's denial of his petition for writ of certiorari ultimately caused the late filing of the Petition"; (3) "the Petitioner does not allege that the clerk of the U.S. Supreme Court failed to

9

send him a copy of the Court's order . . . [or that] his lawyer at the U.S. Supreme Court-level did not receive a copy of the order denying the petition for writ of certiorari"; (4) while "the Petitioner argues that he did not know of the U.S. Supreme Court's order until it was docketed with the Florida Supreme Court[,] . . . all along the Petitioner knew that he had an appeal pending in the U.S. Supreme Court, and the Petitioner offers no reason why the Florida Supreme Court's docket would be a better source of information about the U.S. Supreme Court's decisions"; and, finally, (5) "the Petitioner's receipt of the U.S. Supreme Court's order two weeks after it was issued is not the kind of exceptional circumstance required for equitable tolling . . . [, since a]fter receiving the U.S. Supreme Court's decision, the Petitioner had ample time remaining on his AEDPA clock in which he could have presented a timely federal habeas petition." Doc. 25-10, 11, 12. The district court concluded that, even accepting all of San Martin's allegations as true, he was neither entitled to equitable tolling, nor an evidentiary hearing on the issue. The court also rejected the remaining grounds San Martin had raised, finding that none of them warranted equitable tolling. Doc. 25-12-15.

Petitioner then filed a notice of appeal. The district court construed the notice of appeal as an application for a certificate of appealability and granted it on two issues:

10

Whether a district court is required to conduct an evidentiary hearing to determine whether the petitioner's delayed receipt of a U.S. Supreme Court order denying his petition for writ of certiorari ultimately resulted in the untimely filing of his habeas corpus petition.

Whether a district court may apply equitable tolling to consider an untimely petition under 28 U.S.C. § 2254 where the petition was untimely filed because the petitioner did not receive actual notice of a U.S. Supreme Court order triggering the commencement of the one-year limitation set forth in 28 U.S.C. § 2244(d)(1)(A) until that order was docketed two weeks later with the state supreme court. If the district court applied equitable tolling to account for the two-week delay that occurred at the beginning of the one-year limitation set forth in § 2244(d)(1)(A), the petition would be subject to the district court's review.

This appeal follows.

## II.

Because San Martin filed his federal habeas petition after April 24, 1996, AEDPA governs this proceeding. See Wilcox v. Fla. Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998) (per curiam).

We review a district court's decision to dismiss a petition for a writ of habeas corpus de novo. Drew v. Dep't of Corr., 297 F.3d 1278, 1283 (11th Cir. 2002). We also review de novo a district court's decision on equitable tolling. Id. However, we review the district court's determinations of the relevant facts for clear error. See Dorsey v. Chapman, 262 F.3d 1181, 1185 (11th Cir. 2001). Under this standard, we must affirm a district court's findings of fact unless "the record

11

lacks substantial evidence" to support them. Lightning v. Roadway Express, Inc., 60 F.3d 1551, 1558 (11th Cir. 1995) (internal quotation marks omitted). "[A] determination regarding a party's diligence is a finding of fact that will not be disturbed unless clearly erroneous." Drew, 297 F.3d at 1283, 1287 (internal quotation marks omitted). Finally, we review for abuse of discretion a district court's decision not to conduct an evidentiary hearing on an equitable tolling claim. Id. at 1283.

## III.

### A.    The Petition Was Untimely

AEDPA imposes a one-year statute of limitations on all federal habeas corpus petitions. See 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus . . . ."). This rule "serves the well-recognized interest in the finality of state court judgments" and "reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review." Duncan v. Walker, 533 U.S. 167, 179 (2001).

Pursuant to the portion of the statute relevant here, the one-year limitation period begins to run from "the date on which the judgment became final by the conclusion of direct review." 28 U.S.C. § 2244(d)(1)(A). Interpreting this

12

provision, the Supreme Court has held that "[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." Clay v. United States, 537 U.S. 522, 527 (2003). Likewise, we have held that direct review of a state judgment of conviction concludes on the date of the Supreme Court's denial of a petition for writ of certiorari. See Washington v. United States, 243 F.3d 1299, 1300-01 (11th Cir. 2001) (per curiam).

Under Fed. R. Civ. P. 6(a)(1), "in computing any time period specified in . . . any statute that does not specify a method of computing time . . . [we must] exclude the day of the event that triggers the period[,] count every day, including intermediate Saturdays, Sundays, and legal holidays[, and] include the last day of the period," unless the last day is a Saturday, Sunday, or legal holiday. Consonant with Fed. R. Civ. P. 6(a)(1), AEDPA's one-year limitation period begins to run from the day after the Supreme Court enters an order denying the petition for writ of certiorari. Washington, 243 F.3d at 1301.

The AEDPA clock continues to run until the individual seeking review files a state motion for post-conviction relief. Once the petitioner files a motion for post-conviction relief in state court, the AEDPA clock stops. See 28 U.S.C. § 2244(d)(2) (tolling the limitation period for "[t]he time during which a properly

filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending"). The AEDPA clock resumes running when the state's highest court issues its mandate disposing of the motion for post-conviction relief. Lawrence v. Florida, 549 U.S. 327, 331-32 (2007).

Here, as the district court found, San Martin's petition was untimely under § 2244(d)(1). As we've noted, direct review of Petitioner's conviction concluded on October 5, 1998, when the Supreme Court denied San Martin's petition for writ of certiorari. Accordingly, by application of Fed. R. Civ. P. 6(a)(1), Petitioner had until Wednesday, October 6, 1999, to file this petition. Petitioner waited 363 days until he filed his motion for post-conviction relief in state court on October 4, 1999. Petitioner's filing of the post-conviction motion tolled the one-year limitation period until December 3, 2008, when the Florida Supreme Court issued its mandate denying the relief Petitioner sought. 28 U.S.C. § 2244(d)(2); Lawrence, 549 U.S. at 331-32. Accordingly, San Martin had until Friday, December 5, 2008, to file a federal habeas petition. This petition is untimely because San Martin filed it on December 18, 2008, after 378 days of untolled time had passed -- 13 days more than that allowed under AEDPA.

To begin with, we can find no support for San Martin's claim that his AEDPA clock did not begin to run until October 19, 1998, when he received actual

14

notice of the Supreme Court's denial of his petition for writ of certiorari from his convictions and sentence. Indeed, based on the express language contained in the statute (28 U.S.C. § 2244(d)(1)(A)), the one-year limitation period begins to run from "the date on which the judgment became final by the conclusion of direct review." Id. In light of this language, we have held that direct review of a conviction is final for purposes of AEDPA's statute of limitations on "the day the Supreme Court denied his certiorari petition." Washington, 243 F.3d at 1300-01. Consistent with this holding, we have found that the filing of a motion for reconsideration of the Supreme Court's decision does not prolong the conclusion of direct review. Drury v. United States, 507 F.3d 1295, 1297 (11th Cir. 2007).

Moreover, as the Fifth Circuit has reasoned, Title "28 U.S.C. § 2244(d)(1)(A) looks to when a judgment becomes final, not when the petitioner becomes aware that the judgment is final." Crutcher v. Cockrell, 301 F.3d 656, 657 (5th Cir. 2002) (per curiam). Thus, the Fifth Circuit has found that "[i]n the context of judgments of conviction for which a petition for writ of certiorari to the Supreme Court is filed, we look to when the Supreme Court denied the petition, which occurs on the date the order denying the petition is issued, i.e., filed, by the Clerk of the Supreme Court, not when notification of this order is mailed to or received by the petitioner." Id. Other courts also have rejected the argument that

15

the one-year limitation period only begins to run from the date the petitioner actually received notice that his direct review had concluded. See Rouse v. Lee, 339 F.3d 238, 245 (4th Cir. 2003) ("The limitations period of the AEDPA, however, runs from 'the date on which the judgment became final,' not from the date on which [the petitioner] was served with (or, in this case, merely received) notification of the final judgment." (citation omitted)); United States v. Battles, 18 F. App'x 495, 496 (9th Cir. 2001) (unpublished) (rejecting the petitioner's argument that the AEDPA limitation period ran from the date he received actual notice of the Supreme Court's denial of his certiorari petition because "a conviction has become final, for habeas purposes, when either the time to petition for certiorari has elapsed or the petition is actually denied").

In light of the plain language of § 2244(d)(1) and our holding in Washington, we agree with our sister circuits that San Martin's statute-of-limitations period began to run on October 6, 1998, the day after the Supreme Court denied his petition for writ of certiorari from his convictions and sentence. Based on the application of the statute, San Martin's petition was not timely.

B.     Petitioner Was Not Entitled to Equitable Tolling

If a defendant files a petition for a federal writ of habeas corpus beyond the one-year limitation period, the district court may still review an untimely petition

16

filed by a petitioner entitled to equitable tolling. As the Supreme Court has explained, the time period specified in 28 U.S.C. § 2244 is a statute of limitations, not a jurisdictional bar, and Section 2244 does not bar the application of equitable tolling in an appropriate case. Holland v. Florida, 560 U.S. ----, 130 S. Ct. 2549, 2560 (2010).[8]

The Supreme Court recently reaffirmed, however, that "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 2562 (internal quotation marks omitted); Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam) (holding that equitable tolling is available "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence"). "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" Holland, 130 S. Ct. at 2565 (internal quotation marks and citation omitted). As for the "extraordinary circumstance" prong, like the Supreme Court's articulation in Holland, we too have required a defendant to show a causal connection between the alleged

_____

[8] Thus, in Holland, the Supreme Court squarely rejected the State's claim that equitable tolling is inconsistent with AEDPA's statute of limitations. 130 S. Ct. at 2560.

extraordinary circumstances and the late filing of the petition. See Lawrence v. Florida, 421 F.3d 1221, 1226-27 (11th Cir. 2005).

A court also may consider an untimely § 2254 petition if, by refusing to consider the petition for untimeliness, the court thereby would endorse a "fundamental miscarriage of justice" because it would require that an individual who is actually innocent remain imprisoned. See Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001). The actual innocence exception is "exceedingly narrow in scope," and the petitioner must demonstrate that he is factually innocent rather than legally innocent. Id.; Bousley v. United States, 523 U.S. 614, 623 (1998). Moreover, a court may consider an untimely petition if the petitioner can show that he is "'innocent' of the death penalty because none of the aggravating factors legally necessary for invocation of the death penalty applied." Sibley v. Culliver, 377 F.3d 1196, 1205 (11th Cir. 2004). The review of an actual innocence of death claim will conclude when the court is satisfied of the existence of the minimum state law requirements concerning the presence of aggravating factors. Id.

The burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner. Drew, 297 F.3d at 1286. Mere conclusory allegations are insufficient to raise the issue of equitable tolling.

18

See id. at 1292-93; Pugh v. Smith, 465 F.3d 1295, 1300-01 (11th Cir. 2006);

Helton v. Sec'y for the Dep't of Corr., 259 F.3d 1310, 1314 (11th Cir. 2001) (per

curiam).

San Martin argues that he is entitled to equitable tolling because he did not

receive actual notice of the Supreme Court's denial of his petition for writ of

certiorari from his convictions and sentence until the denial was docketed fourteen

days later in the Florida Supreme Court. As a result, says San Martin, he started

the process lacking fourteen days of his AEDPA time, and his federal petition

would have been timely if the period between the issuance of the Supreme Court's

denial and its recordation in the Florida Supreme Court docket had been equitably

tolled. San Martin additionally points out that post-conviction counsel was not

appointed for him until February 11, 1999.[9]

---

[9] Notably, San Martin has not raised any claim of actual innocence, or equitable tolling on account of actual innocence (or Hurricane Floyd, for that matter), in this Court. Before the district court, however, San Martin had argued for equitable tolling because: (1) the state courts were closed for two days in September 1999 due to Hurricane Floyd; and (2) he was actually innocent of the crimes, citing new evidence from co-defendant Abreu that neither he nor San Martin knew beforehand of any plans to kill Lopez. The district court rejected these arguments, observing that: (1) San Martin did not allege that Hurricane Floyd in any way limited his ability to timely file his § 2254 petition, see Lawrence, 421 F.3d at 1226-27; and (2) the co-defendant's affidavit -- indicating that neither he nor San Martin knew about a murder plan -- is not evidence of actual innocence of the crime or the death penalty, see Sibley, 377 F.3d at 1205. The district court reasoned that regardless of whether Petitioner planned to kill another person, the murdered individual was killed while Petitioner perpetrated a robbery, which still constitutes first-degree felony murder under Florida law. Moreover, the court said, the death penalty remains permissible because Petitioner never challenged several of the aggravators the trial court found in imposing the death penalty. (And, in any event, as the state trial court found: (1) San Martin had failed to establish that, when considering Abreu's affidavit and subsequent testimony, the

19

In order for San Martin to establish that he is entitled to equitable tolling, he must show that: (1) he acted with reasonable diligence; and (2) "some extraordinary circumstance stood in his way and prevented timely filing." Holland, 130 S. Ct. at 2562 (internal quotation marks omitted). The district court found, however, that San Martin did not meet either of these criteria. San Martin has offered nothing to counter the district court's findings of fact, and on the record presented we can discern no basis to find that they were clearly erroneous.

In Holland, for example, the Supreme Court set aside a district court's finding of no diligence. There, however, Holland's counsel had "failed to file Holland's federal petition on time," "failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case," and

State had knowingly forced Abreu to present perjurious testimony to the jury; and (2) regardless of when the plan was discussed, the time was more than sufficient to support the cold, calculated, and premeditated aggravating circumstance.)

On appeal, San Martin has not made these arguments, and therefore has waived them. Isaacs v. Head, 300 F.3d 1232, 1238 (11th Cir. 2002) ("Of the issues for which Isaacs received permission to appeal, he apparently chose to abandon all but eight for purposes of this appeal."); Atkins v. Singletary, 965 F.2d 952, 955 n.1 (11th Cir. 1992) (holding that a habeas petitioner abandons the claims he does not address on appeal). The fact that he discusses the co-defendant's new affidavit in the Statement of Facts is not enough to preserve the issue for appeal. See La Grasta v. First Union Sec., 358 F.3d 840, 847 n.4 (11th Cir. 2004) (holding that a party's reference to having made an argument before the district court in the Statement of Facts is not an adequate substitute for elaborating on the merits of the argument on appeal); Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (deeming an issue waived when its only mention in the party's brief was in the Statement of the Case). Indeed, as for the innocence claim, counsel for Petitioner squarely said at oral argument that San Martin was not raising an actual innocence claim in this Court. Because San Martin has abandoned these claims, we have no occasion to address them here.

20

"failed to communicate with his client over a period of years," despite Holland's

many letters to counsel that repeatedly emphasized the importance of filing the

petition on time, identified the applicable legal rules, pleaded for information about

the Florida Supreme Court's decision, and pleaded with counsel to respond to his

letters.  130 S. Ct. at 2564.  The Supreme Court stressed that:

> Holland not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have Collins -- the central impediment to the pursuit of his legal remedy -- removed from his case. And, the very day that Holland discovered that his AEDPA clock had expired due to Collins' failings, Holland prepared his own habeas petition pro se and promptly filed it with the District Court.

Id. at 2565.  Concluding that the district court erroneously had found a lack of

diligence, the Supreme Court remanded for the lower courts to determine whether

Holland had established extraordinary circumstances sufficient to warrant equitable

relief.  Id.

Similarly, in Knight v. Schofield, 292 F.3d 709 (11th Cir. 2002) (per

curiam), we ruled that a petitioner was entitled to equitable tolling because he was

assured by a state court that it would contact him as soon as a decision was made

concerning the final disposition of his appeal, and the court inadvertently sent

notice of the decision to the wrong person.  Id. at 711.  We found that the petitioner

demonstrated diligence in inquiring about the status of his case when the court

failed to contact him, and the court's failure to notify Knight was certainly beyond his control.  Id.  But we noted that "not in every case will a prisoner be entitled to equitable tolling until he receives notice.  Each case turns on its own facts."  Id.

Since Knight, we have held that a petitioner's efforts to learn the disposition of pre-federal habeas steps are crucial to determining whether equitable tolling is appropriate.  See, e.g., Drew, 297 F.3d at 1288 ("A lengthy delay between the issuance of a necessary order and an inmate's receipt of it might provide a basis for equitable tolling if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely federal habeas corpus petition." (emphases supplied)).  Thus, in Drew, we ruled that a petitioner was not entitled to equitable tolling when he claimed to have contacted the state court by mail, but provided no copies of the letters and did not make any attempt to otherwise contact the court, such as by calling or seeking help from a person who could go to the court personally.  297 F.3d at 1289.[10]

---

[10]  See also Wainwright v. Sec'y, Dep't of Corr., 537 F.3d 1282, 1286 (11th Cir. 2007) (per curiam) (no equitable tolling where the petitioner left himself a few days on the statute of limitations when he properly filed his state post-conviction motion, and then failed to file his federal habeas petition within the remaining time because the order denying rehearing in his state post-conviction proceedings was mailed to his attorney's old address); Wade v. Battle, 379 F.3d 1254, 1265-66 (11th Cir. 2004) (per curiam) (no equitable tolling after the petitioner delayed filing his federal habeas petition for several months and only later received a potentially misleading notice from the Georgia Supreme Court).

22

San Martin's case is nothing like <u>Knight</u> or <u>Holland</u>, and much more like

<u>Drew</u>.  San Martin knew his petition for writ of certiorari was pending with the

Supreme Court, but he failed to make any showings of "reasonable diligence."  He

has not shown (or even averred) that he made any attempt to contact the Supreme

Court to learn about the resolution of his case; that anyone had agreed to contact

him as soon as a decision was made concerning the final disposition of his appeal;

that there is any reason the Florida Supreme Court docket was a better source of

information about a Supreme Court ruling than the Supreme Court docket itself

would have been; or even that he contacted his direct appeal counsel about the

pending decision, or anyone else for that matter to complain that his counsel was

not responding to him, if that were the case.  Nor has San Martin made even the

barest allegation of diligence after he received notice of the Supreme Court's order

-- indeed, he has not shown why he waited 349 days after the Supreme Court

judgment appeared on the Florida Supreme Court docket to file his state post-

conviction motion, tolling AEDPA's statute of limitations, or why he waited

another fifteen days after the Florida courts disposed of his post-conviction motion

to file his federal habeas petition.[11]  Thus, San Martin has made no showing of

_____

[11] We observe, as the State points out, that Petitioner apparently could have filed his first
state court pleading even earlier than he did.  As the record shows, Petitioner signed the
verification attached to this pleading on September 24, 1999, but Petitioner did not file this
pleading in state court until October 4, 1999.  Further, the pleading directly and repeatedly said

23

"reasonable diligence," and we cannot conclude that the district court's finding in this regard was clearly erroneous.

Nor has San Martin shown how "some extraordinary circumstance stood in his way and prevented timely filing." Holland, 130 S. Ct. at 2562 (internal quotation marks omitted). Most importantly, San Martin has not begun to explain how the two-week delay in receiving notice of the Supreme Court's denial of his certiorari petition ultimately caused the late filing of his federal habeas petition; or why he did not have ample time, even after the two-week delay, in which he could have presented a timely federal petition.[12] Indeed, even after the two-week delay, San Martin inexplicably waited almost a full year to perfect the filing of his state post-conviction motion, leaving himself very little time to ultimately file his federal petition, and has given absolutely no explanation for his delay in filing in state court. To the extent he is arguing that he could not have filed his state or

that it was being filed for the purpose of tolling the AEDPA statute of limitations, and not surprisingly, there is no claim that San Martin, or his counsel were unaware of the AEDPA statute of limitations.

[12] As a result, this case is distinguishable from Hollinger v. Sec'y Dep't of Corr., 334 F. App'x 302 (11th Cir. 2009) (per curiam) (unpublished). There, due to an 8-month delay in receiving a Rule 3.850 order, "Hollinger was left with only 12 days to (1) review the Rule 3.850 court's order, (2) prepare and file a motion explaining the need for a belated Rule 3.850 appeal, (3) prepare and file his Rule 3.850 appellate brief, (4) obtain a ruling on his Rule 3.850 appeal, and (5) prepare and file his § 2254 petition." Id. at 307. We held that the 8-month delay effectively prevented Hollinger from timely filing his § 2254 petition, and that the district court erred in finding no causal connection between the 8-month delay and Hollinger's untimely § 2254 petition. Id.

federal post-conviction motions until he obtained a lawyer, his lawyer was appointed on February 11, 1999, which means that he still waited 235 days after having been appointed a lawyer before filing his tolling state post-conviction motion.[13] He has also not shown, for example, that he never received notice of the Supreme Court's denial of his petition or that his direct appeal counsel never received notice; or that the Court inadvertently sent notice of the decision to the wrong person. In short, the district court did not clearly err in finding that San Martin had not shown extraordinary circumstances that stood in his way and prevented him from timely filing.

Because the district court did not clearly err in making either of the requisite factual findings necessary for equitable tolling, it did not err in refusing to apply equitable tolling to San Martin's petition. "In the absence of any showing of his own diligence [or extraordinary circumstances], [San Martin] cannot be entitled to the rare and extraordinary remedy of equitable tolling." Drew, 297 F.3d at 1289;

---

[13] And in any event, while the Supreme Court recently held in Holland that equitable tolling may be available in an "extraordinary" instance in which the conduct of a petitioner's attorney constitutes far more than "garden variety" or "excusable neglect," on this record there is nothing to suggest that not having post-conviction counsel for a short portion of the one-year AEDPA statute-of-limitations period, much less at all, warrants tolling.

see also Sibley, 377 F.3d at 1204 (if a petitioner makes no effort to demonstrate that he meets the Sandvik criteria, then he is not eligible for equitable tolling).[14]

## C.   San Martin Was Not Entitled to an Evidentiary Hearing

San Martin also has not shown that he was entitled to an evidentiary hearing on equitable tolling.  Section 2244 "does not require a hearing on the issue of time-bar or equitable tolling, so the decision as to whether to conduct an evidentiary inquiry is a matter left to the sound discretion of the district court."  Drew, 297 F.3d at 1292.  "An evidentiary hearing may be necessary where the material facts are in dispute, but a petitioner is not entitled to an evidentiary hearing when his claims are merely conclusory allegations unsupported by specifics."  Pugh, 465 F.3d at 1300 (internal quotation marks, citation, and alterations omitted).

Here, the district court found that "[a]n evidentiary hearing is not necessary to dispose of the Petitioner's reasons for equitable tolling."  Doc. 25-12.  On the record before us, the district court did not abuse its discretion in reaching this conclusion.  As detailed above, San Martin has not alleged that he proceeded diligently in attempting to learn of the Supreme Court's disposition of his appeal,

---

[14] The only case San Martin cites is Mendoza v. Carey, 449 F.3d 1065 (9th Cir. 2006). There, the Ninth Circuit held that a petitioner who did not speak English, was denied access to Spanish-language legal materials, and could not procure the assistance of a translator during the running of the AEDPA limitation period "may" be entitled to equitable tolling. Id. at 1069-70. That out-of-circuit case is distinct from this one, where San Martin had ample time to file his petition after receiving notice from the Florida Supreme Court that his direct appeal was terminated, and there is no suggestion of a language problem impeding his filing.

26

or that he proceeded diligently upon learning of the order. Nor has he made any showing that the two-week delay in notice was an extraordinary circumstance that in any way prevented or impeded the timely filing of his federal habeas petition. In fact, San Martin has never submitted any kind of affidavit -- to this Court or the district court -- with any statements concerning the timeliness of his petition, his diligence, or the circumstances surrounding his state court and federal court filings, let alone any extraordinary circumstance that may have impeded him from timely filing his federal petition.[15]

As we held in Drew:

> We are also satisfied that there is no basis for concluding that Drew should have received an evidentiary hearing on his equitable tolling claim. . . . Even if Drew could somehow prove that he did not receive the district court order (and for these purposes we assume this to be so), he has offered no reason to believe that an evidentiary hearing would help him prove that he acted diligently in trying to obtain it. In fact, as discussed already, the same document that would support the claim that he did not receive the order would almost certainly defeat any claim that he sent repeated letters to the Clerk of the Court. Simply put, an evidentiary hearing would be of no value to Drew even if he could show that he did not receive the district court order. In light of the wholly conclusory nature of Drew's recently-presented allegations and in the absence of supporting evidence, the district court did not abuse its discretion in deciding not to hold a hearing.

297 F.3d at 1292-93 (footnote omitted).

---

[15] As the district court noted, the only affidavit San Martin has submitted to the federal courts is that of co-defendant Abreu, regarding San Martin's actual innocence claim.

San Martin has proffered no supporting evidence of diligence or extraordinary circumstances, and as a result, "[t]he record provided no basis for further inquiry by the district court." Pugh, 465 F.3d at 1300. Accordingly, the district court did not abuse its discretion in failing to hold an evidentiary hearing.

## IV.

In sum, the AEDPA statute of limitations cannot be tolled for the two-week period during which the United States Supreme Court had ruled on San Martin's direct appeal but had not yet notified San Martin of that ruling; and San Martin is not entitled to equitable tolling in light of his own lack of diligence and the lack of extraordinary circumstances preventing his timely filing. The district court properly dismissed his petition for a writ of habeas corpus. We therefore **AFFIRM** the district court's judgment.