[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14841
Non-Argument Calendar
_____

D.C. Docket No. 0:09-cv-61873-MGC

DONALD ROPER,

                                                          Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

                                                          Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 26, 2017)

Before TJOFLAT, WILLIAM PRYOR, and MARTIN, Circuit Judges.

PER CURIAM:

Donald Roper, a Florida prisoner, appeals the district court's dismissal of his 28 U.S.C. § 2254 habeas corpus petition as time-barred. After careful review, we affirm.

I.

A.

In January 2004, Roper pleaded guilty to various offenses, including burglary of a dwelling, grand theft, and dealing in stolen property, and was sentenced to 30-years imprisonment. In July 2005, the Florida Fourth District Court of Appeal affirmed Roper's convictions and sentence. Roper filed a motion for rehearing, which was denied on September 15, 2005. The mandate issued on October 7, 2005.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets a one-year statute of limitations for filing a federal habeas petition challenging a state court judgment. 28 U.S.C. § 2244(d)(1). For Roper, this limitations period began to run on December 14, 2005, when the 90-day period for filing a petition for writ of certiorari expired. See 28 U.S.C. § 2244(d)(1)(A); Clay v. United States, 537 U.S. 522, 527, 123 S. Ct. 1072, 1076 (2003) ("Finality attaches when . . . the time for filing a certiorari petition expires."). Thus, Roper had until December 14, 2006 to timely file a federal habeas petition.

On October 8, 2007, Roper, through counsel Steven Hammer, filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. On November 6, 2009, Roper's state postconviction proceedings became final when the Florida Fourth District Court of Appeal affirmed the denial of his Rule 3.850 motion. Ten days later, on November 16, 2009, Roper filed a pro se § 2254 habeas corpus petition in the district court.

Ordinarily, a Rule 3.850 motion would statutorily toll AEDPA's limitations period. See 28 U.S.C. § 2244(d)(2); Brown v. Sec'y for Dep't of Corr., 530 F.3d 1335, 1338 (11th Cir. 2008). However, Roper's Rule 3.850 motion did not because it was not filed until October 8, 2007—298 days after the federal limitations period expired on December 14, 2006. See Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001) (explaining that "a state court petition . . . that is filed following the expiration of the federal limitations period cannot toll that period because there is no period remaining to be tolled" (quotation omitted)). Roper conceded that his § 2254 petition was not timely but argued he was entitled to equitable tolling of the statute of limitations.

Without holding an evidentiary hearing, the district court determined that Roper could not demonstrate equitable tolling and dismissed his petition as time-barred. This Court reversed and remanded for an evidentiary hearing on the facts

3

underlying Roper's request for equitable tolling.  See Roper v. Dep't. of Corr., 434 F. App'x 786 (11th Cir. 2011).

B.

The evidentiary hearing established the following facts.  On June 29, 2006, approximately six months before the federal limitations period expired, Roper's sister signed a retainer agreement with Hammer.  The retainer agreement provided that Hammer would represent Roper in his state postconviction proceeding and specified that his representation would be "limited" to that proceeding.[1]

On August 18, 2006, Roper sent a letter to Hammer.  The letter said:

> Sir, I'd like to know if you've taken any steps to reserve my fed. habe. My date as you know on my "direct appeal" was Oct. 7-05. [] It's to my understanding, that for some reason my 3.850 falls through, I need to preserve my fed. habe.[2]

On August 29, 2006, Hammer responded to Roper.  Hammer's letter said:

> I am in receipt of your letter dated August 18, 2006, wherein you expressed concern regarding preserving your Federal Habeas.  Please be advised that we are in the process of reviewing your transcripts and we will be filing your motion prior to the October 7th anniversary date of the issuance of the Mandate on your appeal.

When Hammer wrote this letter, he believed it would be possible to file Roper's Rule 3.850 motion by October 7, 2006, even though under state law Roper had until October 8, 2007 to timely file his Rule 3.850 motion.

---

[1] Roper testified that Hammer was hired to file both a Rule 3.850 motion and a § 2254 petition, but the text of the retainer agreement directly contradicted this testimony.

[2] Roper testified that "fed. habe" was an abbreviation for federal habeas corpus.

After completing his review of Roper's case, Hammer "determined we could proceed one of two ways." Hammer could either file the Rule 3.850 motion "immediately" or he could take additional time in order to have a mental health expert evaluate Roper to ascertain whether trial counsel was constitutionally ineffective for failing to present mitigating evidence. Hammer believed they should pursue the latter option, even though delaying the Rule 3.850 motion would forfeit Roper's federal habeas rights. On September 6, 2006, Hammer sent Roper a letter informing him that "there are two ways in which we can file your [Rule 3.850] motion" and asking him for a telephone conference so they could "discuss this matter fully."

In the following weeks, Hammer had two conversations with Roper in which they discussed the two ways of proceeding with the Rule 3.850 motion. Hammer testified that he told Roper: "[W]e could file your motion now and preserve your federal habeas rights, or we can not file it, [which will] give me the opportunity to look into this mental health aspect." After discussing it with Hammer, Roper decided to delay filing the Rule 3.850 motion in order to allow Hammer to obtain a mental health evaluation and present a more comprehensive ineffectiveness claim. On September 22, 2006, Hammer sent Roper a letter memorializing this decision:

> Please allow this letter to confirm our conversations, wherein we discussed the different ways that I felt that we could address the issues in your case; and the fact that after speaking with you and your family, we have determined to go about consulting with some medical

5

experts in an effort to develop the mitigation issues that should have been brought to light by your previous attorney prior to the entry of your plea.

At the hearing, Hammer and Roper disputed whether Hammer explicitly told Roper that delaying the Rule 3.850 motion would forfeit Roper's ability to file a timely § 2254 petition. Hammer testified that he "absolutely" discussed this with Roper. Hammer thought "it was agreed . . . [and] understood by Mr. Roper and his family[] that we would not be filing the [Rule 3.850] motion within th[e] period of time to preserve his federal habeas rights."[3] Roper, on the other hand, testified that Hammer never discussed Roper's federal habeas rights during their mid-September phone calls and did not "give [Roper] any reason to believe he wasn't going to take care of [his] federal habeas rights and do what needed to be done to preserve [his] federal habeas." Yet Roper did recall Hammer telling him "that there may not be grounds for a federal habeas." And Roper conceded that he agreed to whatever Hammer's assessment was of the viability of a federal habeas petition, because he "left [his] will in [Hammer's] hands" and "let[] [Hammer] take care of" whatever Hammer "felt . . . needed to be done to represent me."

---

[3] Hammer admitted he never memorialized this understanding in writing and that, "[i]n hindsight, [he] probably should have."

C.

Following the hearing, the magistrate judge issued a Report and Recommendation ("R&R") recommending that Roper's § 2254 petition be dismissed as untimely because Roper failed to demonstrate that equitable tolling was warranted. The magistrate judge found Hammer's "testimony credible that conversations were had regarding the filing of a scant Rule 3.850 motion and pursuit of a more comprehensive one, which would not serve to toll the limitations period." The magistrate judge also found that Roper "knowingly agreed to wait to file his Rule 3.850 [motion] until 2007, which was timely filed under state law, but outside the federal one-year limitations period." The magistrate judge thus determined that Roper "chose to forego filing a premature Rule 3.850 motion which would have tolled the federal limitations period." While Roper "now regrets that decision," the magistrate judge said, "that is insufficient to warrant equitable tolling." In his objections to the R&R, Roper conceded that "Mr. Hammer told [him] in September 2006 that he had to decide between filing a 'scant' Rule 3.850 motion 'immediately' or giving up his federal habeas rights." (Emphasis added.)

7

The district court adopted the R&R and dismissed Roper's petition.[4]  The court granted a certificate of appealability on the issue of whether Roper was entitled to equitable tolling.  This appeal followed.

## II.

We review de novo a district court's decision to dismiss a petition for a writ of habeas corpus.  San Martin v. McNeil, 633 F.3d 1257, 1265 (11th Cir. 2011).  We also review de novo a district court's decision on equitable tolling.  Id.  However, we review for clear error the district court's factual findings.  Id.  Under this standard, we must affirm a district court's findings of fact unless "the record lacks substantial evidence" to support them.  Id. (quotation omitted).

## III.

The district court correctly determined that Roper is not entitled to equitable tolling of the statute of limitations.  In order to obtain equitable tolling, the petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Holland v. Florida, 560 U.S. 631, 649, 130 S. Ct. 2549, 2562 (2010) (quotation omitted).  This Court recently defined "the appropriate standard for gauging when attorney error amounts to an extraordinary circumstance."  See Cadet v. Fla. Dep't of Corr., No. 12-14518, 2017 WL 727547, at *4 (11th Cir. Feb.

---

[4] Because the district court adopted the magistrate judge's R&R, we will refer to the magistrate judge's findings as those of the district court.

8

24, 2017).  In <u>Cadet</u>, the Court held that "attorney negligence, even gross or egregious negligence, does not by itself qualify as an 'extraordinary circumstance' for purposes of equitable tolling; either abandonment of the attorney-client relationship . . . <u>or</u> some other professional misconduct <u>or</u> some other extraordinary circumstance is required."  <u>Id.</u> at 8.

Roper has failed to establish "extraordinary circumstances" that warrant equitable tolling.[5]  <u>Holland</u>, 560 U.S. at 649, 130 S. Ct. at 2562.  Roper argues he has demonstrated "extraordinary circumstances" because Hammer failed to follow Roper's "directive" by failing "to preserve Mr. Roper's 'fed. habe.' despite Mr. Roper's letter directing him to do so."  It is true Roper initially told Hammer to preserve his federal habeas rights.  However, Roper withdrew this "directive" when, after consulting with Hammer, Roper decided to delay the filing of his Rule 3.850 motion beyond the federal limitations period.  The Supreme Court has made clear that equitable tolling is not "available when a litigant was responsible for [his] <u>own</u> delay."  <u>Menominee Indian Tribe of Wis. v. United States</u>, 577 U.S. ___, 136 S. Ct. 750, 756 (2016).  The "extraordinary-circumstances prong . . . . is met only where the circumstances that caused a litigant's delay are both extraordinary

---

[5] The district court found that Roper failed to establish both the extraordinary-circumstances prong and the due-diligence prong of the equitable tolling analysis.  On appeal, Roper's arguments focus only on the extraordinary-circumstances prong.  Because we conclude that he has not shown "extraordinary circumstances," we need not reach the due diligence prong of the analysis (including whether Roper waived the due diligence issue by not raising it on appeal).

<u>and</u> beyond [his] control." <u>Id.</u>  Because Roper agreed to delay the filing of his Rule 3.850 motion, the delay was not "beyond [his] control" and therefore does not qualify as an "extraordinary circumstance." <u>Id.</u>

Roper next argues he should be excused from his decision to delay filing his Rule 3.850 motion because Hammer "failed to explain the matter to the extent reasonably necessary to permit Mr. Roper to make [an] informed decision[]." Roper claims his decision was uninformed for two reasons, both of which we reject.

First, Roper argues Hammer never explicitly told him that by waiting to file his Rule 3.850 motion he would lose his ability to file a timely § 2254 petition. This argument challenges a factual finding of the district court.  Although there was conflicting testimony about whether Hammer expressly told Roper that filing a delayed Rule 3.850 motion would mean forgoing a timely § 2254 petition, the district court found that Hammer did explain this to Roper.  This finding was not clearly erroneous.  The court rejected Roper's testimony after correctly observing that it was "fraught with inconsistencies and irreconcilable with [his] affidavit[]"; "often confuse[d]" a § 2254 petition with a Rule 3.850 motion; and was "often vague."  In any event, Roper admitted in his objections to the R&R that Hammer told him in their mid-September 2006 phone conversations that delaying his Rule 3.850 motion would mean "giving up his federal habeas rights."  Therefore, we

10

reject Roper's claim that Hammer never informed him that delaying his Rule 3.850 motion would make his § 2254 petition untimely.

Second, Roper argues his decision to delay filing his Rule 3.850 motion was not "informed" because it was based on Hammer's mistaken belief that the federal limitations period expired on October 7, 2006, when in fact it expired on December 14, 2006. Although the district court did not make a finding on this issue, the evidence does indicate that Hammer miscalculated the limitations period. In Hammer's August 29, 2006 letter, Hammer responded to Roper's "concern regarding preserving [] Federal Habeas" by telling him that his Rule 3.850 motion could be filed by "the October 7th [2006] anniversary date of the issuance of the Mandate on your appeal." And at the hearing before the magistrate judge, Hammer explained it was his understanding that Roper's § 2254 petition had to be filed "within a year of the denial of his direct appeal." But of course this is wrong. The limitations clock for Roper's federal habeas petition did not begin at "the denial of his direct appeal"—it began 90 days later, December 14, 2005, when the period for petitioning for certiorari ended.[6] Clay, 537 U.S. at 527, 123 S. Ct. at 1076; Sup. Ct. R. 13(1).

---

[6] Hammer was also mistaken in thinking that the federal limitations period began on the date the mandate issued in Roper's direct appeal. Under Supreme Court Rule 13(3), the date of the issuance of the mandate is irrelevant for determining when a certiorari petition can be filed, and, therefore, it is also irrelevant for determining when the federal habeas limitations period begins. Sup. Ct. R. 13(3); see also Clay, 537 U.S. at 529, 123 S. Ct. at 1077 (rejecting the argument that a conviction becomes "final" for purposes of AEDPA's statute of limitations upon

11

Roper argues that Hammer's miscalculation of the limitations period led Hammer to misadvise Roper about his options for pursuing postconviction relief. According to Roper, Hammer believed it was not possible to file a Rule 3.850 motion with mental health evidence before the federal habeas deadline only because Hammer believed the deadline was over two months earlier than it actually was. Roper argues that if Hammer had correctly determined that the deadline was December 14, 2006, he would not have placed Roper in a position of choosing between securing a mental health evaluation and preserving his federal habeas rights, because the evaluation could have been obtained and incorporated into a Rule 3.850 motion before the December 14, 2006 federal deadline.

This argument rests on a series of factual assertions about which the district court did not make findings. But, even assuming that Hammer did incorrectly advise Roper about the federal limitations period and then incorrectly determined there was not enough time to complete a Rule 3.850 motion supported by expert evidence before the federal deadline, Hammer's actions would still not amount to an "extraordinary circumstance." That is because an attorney's negligence, including a miscalculation of the limitations period, does not constitute an

---

issuance of the mandate by the appellate court). Roper's limitations period began 90 days after his motion for rehearing in his direct appeal was denied on September 15, 2005. See Sup. Ct. R. 13(3) ("[T]he time to file the petition for a writ of certiorari . . . runs from the date of the denial of rehearing or, if rehearing is granted, the subsequent entry of judgment."). Ninety days after September 15, 2005 is December 14, 2005.

"extraordinary circumstance" for purposes of equitable tolling.  See Holland, 560 U.S. at 651–52, 130 S. Ct. at 2564 ("[A] simple miscalculation that leads a lawyer to miss a filing deadline does not warrant equitable tolling." (quotation and citation omitted)); Cadet, 2017 WL 727547, at *8 ("[A]ttorney negligence, even gross or egregious negligence, does not by itself qualify as an 'extraordinary circumstance' for purposes of equitable tolling.");  Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000) ("Any miscalculation or misinterpretation by [the defendant's] attorney in interpreting the plain language of the statute [of limitations] does not constitute an extraordinary circumstance sufficient to warrant equitable tolling.").  Therefore, Roper has failed to show he is entitled to equitable tolling of the statute of limitations.  The district court correctly dismissed his § 2254 petition as time-barred.

**AFFIRMED.**