[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14388
Non-Argument Calendar
_____

D.C. Docket No. 5:16-cv-00110-LC-CJK

RANDOM JACKSON,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.
_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(July 22, 2019)

Before WILSON, GRANT, and HULL, Circuit Judges.

PER CURIAM:

While his state postconviction appeal was pending in the Florida courts,

Random Jackson's attorney was disbarred.  Jackson never learned about the denial

of his state appeal until the time to file a federal habeas petition had come and

gone.  On appeal, he argues that the district court erred in dismissing his petition as untimely because it should have equitably tolled the Antiterrorism and Effective Death Penalty Act's limitations period.  But because Jackson has failed to demonstrate reasonable diligence, we affirm.

I.

A Florida jury convicted Random Jackson of first-degree murder and he was sentenced to life imprisonment.  The Florida First District Court of Appeal affirmed the judgment, and rehearing was denied.  Jackson did not file a petition for writ of certiorari with the United States Supreme Court, and upon the expiration of his time to do so, his conviction became final on December 12, 2011.  *See Akins v. United States*, 204 F.3d 1086, 1089 n.1 (11th Cir. 2000).[1]

On December 5, 2012—shortly before the one-year limitations period for federal habeas relief would have been expired—Jackson filed a state-court motion for postconviction relief.  Jackson retained Bernard Daley, a Florida attorney, to represent him for any appeal of that postconviction motion.[2]  Jackson alleges that he and Daley "specifically discussed that I had time left to pursue federal habeas

---

[1] The 90-day period to file a petition for writ of certiorari would have expired on December 11, but because December 11 was a Sunday, Jackson had until Monday, December 12 to file his petition.  *See* Sup. Ct. R. 13.1; *id.* 30.1.

[2] Jackson's brief on appeal suggests that Daley was hired to file the initial postconviction motion, but Jackson's habeas petition indicates that Daley was hired *after* the initial motion had been filed in order to represent Jackson on appeal.  This discrepancy is immaterial.

relief (if necessary) and we specifically asked if he would represent me in federal habeas proceedings (if necessary) and he agreed that he would—and he promised to timely file a federal habeas petition should I be unsuccessful in my [state postconviction] proceeding." Jackson's motion for postconviction relief was denied, and Daley filed a state-court appeal.

On April 30, 2015, while Jackson's state appeal was pending, Daley sent Jackson a letter explaining that he was "having some issues" with the Florida bar; in fact, Daley had been disbarred on April 24.[3] The letter stated that another attorney, Wayne Mitchell, would take over Jackson's case. Despite his disbarment, Daley never withdrew as the attorney of record in Jackson's state postconviction appeal. *See Jackson v. State*, 174 So. 3d 998 (Fla. Dist. Ct. App. 2015) (table) (listing Daley as Jackson's attorney). So when the Florida courts denied that appeal on September 28, 2015,[4] Daley—but not Jackson—presumably received the notice. Jackson alleges that Daley never told him about the denial.

Instead, Jackson learned that his state appeal had been denied when his mother, who had checked the online docket out of curiosity, told him on February 13, 2016. He sought to retain other counsel, having never heard from Wayne

---

[3] On December 12, 2015, Daley sent another letter to Jackson enclosing the disbarment order.

[4] The Florida court's mandate issued on October 14, 2015, after the 15-day deadline for a motion for rehearing had expired. *See* Fla. R. App. P. 9.330(a).

Mitchell. On February 22,[5] Daley sent Jackson another letter to offer "some clarification as to my April 30th, 2015 letter":

> In that letter I made reference to Wayne Mitchell as taking over your case and representing you in any post-conviction matters. This was a misstatement; Mr. Mitchell *will not* automatically be assuming any of my prior cases, including your case.

To this day, no one named "Wayne Mitchell" (there are apparently two Florida attorneys by that name) has communicated with Jackson about his case.

Jackson's newly retained counsel filed a federal habeas petition on April 11, 2016. The state asked the district court to dismiss that petition as untimely. A magistrate judge issued a report and recommendation finding that Jackson had failed to exercise reasonable diligence—first by failing to check in with his attorney or to ask about the status of his appeal, and second by waiting nearly two months to file a federal habeas petition even after learning on February 13 that his appeal had been denied. The magistrate judge reasoned that "[n]othing prevented [Jackson] from immediately filing his federal habeas petition on his own once he learned his postconviction appeal concluded," noting that Jackson "admits that his habeas claims are drawn from his prior counseled state court pleadings." The district court adopted the report and recommendation.

---

[5] The letter is misdated as February 22, *2015*, but the content of the letter clearly demonstrates that it was sent in 2016.

A judge of this Court granted a certificate of appealability, limited to one issue: "Whether the district court erred in concluding that Mr. Jackson is not entitled to equitable tolling of the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996."

## II.

"We review *de novo* the district court's dismissal of a state prisoner's petition for writ of habeas corpus," including "the determination that the petition was time-barred under the Antiterrorism and Effective Death Penalty Act's ('AEDPA') limitation period." *Arthur v. Allen*, 452 F.3d 1234, 1243 (11th Cir. 2006). But "[b]ecause the question of a party's diligence is a question of fact, we review it, and other factual findings, for clear error, and will affirm unless the record lacks substantial evidence to support that determination." *Id.* (internal quotation marks and citation omitted).

## III.

The Antiterrorism and Effective Death Penalty Act sets a one-year limitations period for state prisoners to file a federal habeas petition. 28 U.S.C. § 2244(d)(1). That period begins to run on the latest of several listed events—here, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* But it is tolled for the "time during which a properly filed application for State post-conviction or other

5

collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

There is no question that, without equitable tolling, Jackson's petition was untimely. His conviction became final on December 12, 2011. So the clock started ticking on December 13, 2011, and—absent tolling—would have expired on December 13, 2012. *See San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) (limitations period begins to run on day after triggering event); *Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (under "anniversary method," limitations period expires on one-year anniversary of the date it began to run). Jackson filed a state-court motion for postconviction relief on December 5, 2012, which stopped the clock but left him with little time to file a federal habeas petition once it eventually restarted. After the Florida courts denied Jackson's postconviction appeal on September 28, 2015 and issued the mandate on October 14, Jackson had just eight days to file a federal habeas petition. He failed to do so until April 11, 2016, rendering his petition untimely.

Jackson acknowledges this, but claims that he is entitled to equitable tolling because his attorney abandoned him. A "petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks and

citation omitted).  Attorney abandonment qualifies as an "extraordinary circumstance."  *Thomas v. Fla. Att'y Gen.*, 795 F.3d 1286, 1291–94 (11th Cir. 2015); *see also Maples v. Thomas*, 565 U.S. 266 (2012) (attorney abandonment constitutes "cause" to excuse procedural default).  But even where extraordinary circumstances exist, a habeas petitioner still has the burden to show reasonable diligence.  *San Martin*, 633 F.3d at 1268 (burden is on petitioner); *see also Melson v. Comm'r, Ala. Dep't of Corr.*, 713 F.3d 1086, 1089–90 (11th Cir. 2013) (per curiam) (rejecting equitable tolling claim based on lack of reasonable diligence without assessing whether extraordinary circumstances existed).

The district court, in adopting the report and recommendation, found that Jackson failed to demonstrate reasonable diligence between April 30, 2015, when Daley informed him that Mitchell would be taking over the case, and February 13, 2016, when Jackson learned through his mother that his appeal had been denied.  According to the district court, Jackson should have taken "independent steps to check on the status of his appeal," such as contacting Mitchell or the Florida courts.  Jackson points out that the state's own guidance instructs clients to direct case-status inquiries to their attorneys rather than contacting the court directly, and that state appeals routinely take over a year to be resolved.  But that does not explain why Jackson failed to contact Mitchell, who Jackson alleges "never communicated with [him] in any form," even after months of radio silence.

7

At any rate, even if we agreed with Jackson that he was diligent up until February 13, his claim would still fail because he has failed to demonstrate reasonable diligence after learning of his predicament. He knew that he had precious little time to file a federal habeas petition after his state appeal was denied, having "specifically discussed" the timeliness issue with Daley. He learned on February 13 that his appeal had been denied, and if that left any doubt that he had been abandoned, Daley's February 22 letter made it explicit. Jackson nonetheless failed to file his federal habeas petition until nearly two months later, on April 11—despite the fact that "his habeas claims are drawn from his prior counseled state court pleadings." The district court therefore did not clearly err in finding a lack of diligence.

True enough, the standard is "reasonable diligence," not "maximum feasible diligence." *Holland*, 560 U.S. at 653 (internal quotation marks and citations omitted). But here, Jackson—who bore the burden—has not put forward *any* theory of diligence. His argument on appeal is based on a convoluted counterfactual about what would have happened if Daley had not abandoned him: according to Jackson, if Daley had told him about the state court's decision on September 28, he would have filed a motion for rehearing on October 13, the fifteen-day deadline for doing so; the state court probably would have taken about 30 days to deny that motion (although "there is no way to know exactly how long

8

it would have taken," Jackson speculates that it would have been around the same amount of time—33 days—that the courts took to deny rehearing on his direct appeal); and then the mandate would not have issued for another 15 days after the rehearing denial.  All told, Jackson says, if everything had gone as planned, he would have had 63 days after the September 28 opinion in which to file his federal habeas petition.  And because he filed his petition on April 11, which was just 58 days after learning on February 13 that his appeal had been denied, Jackson says he is entitled to equitable tolling.

Jackson's hypothetical fails to address his burden: to show that he was reasonably diligent under the *actual* circumstances of his case, not to show what might have happened if Daley had never abandoned him.  And because he has failed to put forth any facts demonstrating reasonable diligence after February 13, it was not clear error for the district court to find a lack of diligence.

*      *      *

Because Jackson has failed to demonstrate that he diligently pursued his rights, the district court's dismissal of his federal habeas petition as untimely is **AFFIRMED.**

9