NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0333n.06
Filed: May 15, 2009

No. 07-1766

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MICHAEL WILLIS | ) | |
| | ) | |
| Petitioner-Appellant | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| KURT JONES | ) | |
| | ) | |
| Respondent-Appellee | ) | |
| | ) | |

BEFORE: DAUGHTREY, ROGERS, and KETHLEDGE, Circuit Judges.

**ROGERS, Circuit Judge.** This case presents a relatively straightforward substantive question of law lurking behind complex questions of procedure: Did Michael Willis file a timely habeas petition under AEDPA? Several years after his conviction, Willis requested records concerning his case. In response, Michigan disclosed a record containing *Brady* material that it had not disclosed at trial. When Willis filed a habeas petition, Michigan argued that the petition was untimely. Its willingness to turn over the record when asked, Michigan continues to argue, showed that Willis could have discovered the record sooner, and thus did not act with "due diligence" sufficient to toll AEDPA's strict statute of limitations. The district court accepted Michigan's argument and dismissed Willis's petition. That dismissal proceeded through all stages of appellate review, including denial of certiorari, to become final. Willis subsequently asked the district court

to grant relief from its judgment under Rule 60(b). The district court refused, reasoning that it had correctly resolved the issue before. And in this court the state elected to defend that ruling solely on the merits, not on the grounds that the case had been decided already. Because the district court and the state chose to defend their position on the merits, rather than on the normal procedural bars that forbid reexamining final judgments, we may reach the merits in the unusual circumstances presented by this case. Willis should also prevail on the merits of the substantive question: In order to file a timely petition under AEDPA, due diligence did not require Willis to ask the state if it had withheld *Brady* material unknown to him. Willis's pro se habeas petition, insofar as it is based on the late-disclosed *Brady* material, was timely filed. The district court thus must consider it on the merits on remand.

## I. Background

In January 1992, Sam Youkhanna died as the result of an armed robbery. Several people witnessed the robbery, but the perpetrator escaped from the scene before police arrived. Michigan later charged Michael Willis with the crime, and in 1993 obtained a conviction for first degree felony murder, armed robbery, and a firearm offense. The state sentenced Willis to life without parole for the murder, a concurrent term of life for the armed robbery, and a consecutive term of two years for the firearm felony.

Willis claims that the state's principal evidence at trial that linked Willis to the crime came from eyewitnesses who had failed to identify Willis from photo lineups before they identified him at trial. The state has not contested Willis's characterization of this evidence in this court.

In addition to the eyewitness testimony, the state introduced a police report at trial. The report states that police recovered three "latent lifts" from the crime scene, and that one, a "palm impression," appeared "suitable for identification."[1] However, the report claimed, no comparison was made because the "Central Records Division" did not have Willis's palmprints "on file."[2]

Willis subsequently received a record from the Central Records Division showing that it did have his palmprint on file. Furthermore, the filed copy of his palmprint had written on it the name of the officer who prepared the report denying the existence of the record, Willis's case number, and a date fifteen days before the date of the report that denied the existence of the record. Willis claims that he could have used the record, among other things, to impeach the state police who presented evidence in support of his conviction and to attack the police report that was introduced into evidence.

Willis first obtained the palmprint record on June 24, 1998. He sought collateral relief in state court from April 12, 1999, until May 29, 2002. After the state courts' final denial of collateral relief, Willis filed a petition for habeas, which the district court received on June 12, 2002.

---

[1]At oral argument, Willis claimed that eyewitness testimony linked this palmprint to the robber. As such testimony does not appear to be in the record on this appeal, that assertion will be given no weight in this opinion.

[2]It is not clear from the record in this court why the state did not take a palmprint for comparison once it had Willis in custody. *See Gilbert v. California*, 388 U.S. 263, 266-67 (1967) (noting that police may investigate "identifying physical characteristic[s]" of the body without violating an accused's constitutional rights). The record does not show that either side has proffered whether the print recovered from the scene matches Willis's or not.

For purposes of his original habeas petition, Willis claims that less than a year of non-tolled time elapsed between the discovery of the impeaching record and his habeas petition, and therefore his petition was timely under AEDPA's one-year limitations period. The state concedes that if June 24, 1998, is the relevant start date, Willis's habeas petition was timely. *See* Michigan's "Response to [Willis's] Reply to [Michigan's] Motion to Dismiss" at 2. But the state and the district court relied on the argument that Willis could have discovered the evidence earlier, and that therefore Willis's deadline passed before state court proceedings tolled the statute of limitations.

Willis's pro se habeas petition made several arguments: ineffective assistance of trial counsel, arguments that can be construed as claiming ineffective assistance of appellate counsel, a *Brady* claim, and a 14th Amendment claim. The remainder of his pro se filings continued to assert a potpourri of claims, but only the *Brady* claim is relevant to the present analysis.[3]

The state responded to the habeas petition by moving to dismiss based on AEDPA's statute of limitations. Willis opposed that motion by arguing that his petition was timely filed in light of the newly discovered evidence and by arguing in the alternative that he was entitled to equitable tolling because of actual innocence or diligence in seeking relief.

---

[3]In addition to making claims based on the palmprint record, Willis grounded claims on various other pieces of evidence. These included medical records, records related to a North Carolina drivers' license, and records related to cancelled checks. However, the claims based on this evidence are problematic for two reasons—the evidence was within Willis's knowledge before AEDPA's limitations period ran, and the arguments based on the evidence were weak. *See infra* p. 18. The district court's overlooking of the *Brady* issue is somewhat understandable in light of the numerous weak arguments Willis advanced in his pro se filings.

The district court issued an order dismissing the habeas petition on April 25, 2003. It rejected Willis's argument that the *Brady* evidence was newly discovered solely because "whether Petitioner may have had a palm print on file with the police was information within his own knowledge at the time of trial and appeal."

Willis moved for reconsideration on May 9, 2003. In his motion he pointed out that the state had represented that the palmprint was not on file. The district court denied the motion without analysis on May 27. Willis then moved for a certificate of appealability. The district court denied a COA on in June 2003. Willis also requested a COA from this court by filing a notice of appeal.[4] That request is docketed in this court under case number 03-1805.

Pursuant to this court's standard procedures, a single judge first considered Willis's request.[5] That judge issued a short order denying a COA without comment on March 5, 2004. After Willis moved for rehearing, three additional judges considered Willis's request, but rejected it without comment on June 1.

Willis petitioned the Supreme Court for certiorari in November 2004, and the Court denied the petition in January 2005.

In April 2007, Willis, still proceeding pro se, filed his Rule 60(b) motion. Willis's motion was mainly based on a claim that *House v. Bell*, 547 U.S. 518 (June 12, 2006), showed that the

---

[4]Fed. R. App. P. 22(b)(2) provides, "If no express request for a [COA] is filed, the notice of appeal constitutes a request addressed to the judges of the court of appeals."

[5]Fed. R. App. P. 22(b)(2) provides, "A request [for a COA] addressed to the court of appeals may be considered by a circuit judge or judges, as the court prescribes."

district court had evaluated his actual innocence claim under the wrong standard, but the motion mentioned the *Brady* evidence. Michigan did not file a response to the motion before the district court ruled. The district court denied the motion, stating that "[n]one of the issues raised in the present motion regard newly discovered evidence which could not have been previously found and/or presented to the Court during trial." "Petitioner has failed to provide any compelling reason for the court to grant his motion. Petitioner offers only those arguments which it [sic] has made multiple times already." The district court denied a COA for the Rule 60(b) motion in November 2007.

Willis requested a COA from this court. That request was referred to a single judge of this court, who granted the request in April 2008 in an order stating in full:

> Michael Willis moves for leave to proceed in forma pauperis on appeal from a district court order that denied his Fed. R. Civ. P. 60(b) motion for relief from judgment in this petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. The district court denied Willis a certificate of appealability, and Willis now moves this court for a certificate of appealability pursuant to Fed. R. App. P. 22(b).
> The motion for a certificate of appealability is granted, and the motion for leave to proceed in forma pauperis is granted. The clerk shall appoint counsel and a briefing schedule established [sic].

Willis's appointed counsel briefed this case as if it were an appeal from the original denial of habeas. The brief states that the issue before the court is "whether Mr. Willis's first federal habeas petition is timely pursuant to 28 U.S.C. § 2244(d)." The brief argues based on three different grounds: AEDPA's newly discovered evidence provision, equitable tolling through actual innocence, and equitable tolling through extraordinary diligence. The brief does not explain how

this court may appropriately reach any of those issues while it considers the denial of the Rule 60(b) motion.

But Michigan's brief fares no better. Its counterstatement of the issue before this court is "[w]here Petitioner did not file his petition within the applicable time period, and where Petitioner failed to present adequate grounds for equitable tolling of the time period, did the District Court erroneously conclude that the petition was untimely, thus requiring dismissal?" Michigan likewise does not explain how an appeal from the denial of a Rule 60(b) motion affects the merits questions it chose to brief.

At oral argument counsel responded to this court's request that they address what issues are properly before this court.

## II. Jurisdiction

This court presently has jurisdiction only to rule on the district court's denial of Willis's Rule 60(b) motion. Without a COA, a court of appeals lacks jurisdiction over a denial of habeas relief. 28 U.S.C. § 2253(c)(1). Moreover, a COA only vests jurisdiction to consider issues specified in the certificate. *Id.* § 2253(c)(3); *see Valentine v. Francis*, 270 F.3d 1032, 1035 (6th Cir. 2001) (habeas); *see also Dunham v. United States*, 486 F.3d 931, 934-35 (6th Cir. 2007) (same in § 2255 context).

The COA in this case only grants jurisdiction to decide whether the district court properly ruled on the 60(b) motion, and does not create a new appeal from the original decision to deny habeas. The operative language of the COA order merely states that the "motion for a [COA] is granted." But the order earlier states that Willis sought to appeal "a district court order that denied

his Fed. R. Civ. P. 60(b) motion." Context shows that the COA should be read to apply only to the 60(b) ruling, not to the underlying denial of habeas.

Moreover, the COA does vest jurisdiction even though it does not "indicate which specific issue or issues satisfy" the "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3), 2253(c)(2). Our practice is that "a certificate of appealability, even if improvidently granted, vests jurisdiction in the court of appeals." *Porterfield v. Bell*, 258 F.3d 484, 485 (6th Cir. 2001) (citing *United States v. Marcello*, 212 F.3d 1005, 1008 (7th Cir. 2000)); *see also Frazier v. Huffman*, 343 F.3d 780, 788 (6th Cir 2003), *amended on other grounds* 348 F.3d 174 (excusing "procedural error" of district court in granting improper COA and proceeding to the merits).[6]

That alone would not rule out the possibility of allowing this appeal to conform to the briefing by sua sponte enlarging the COA to include the merits of the earlier decision. Appellate Rule 22(b)(2) allows circuit judges to treat a notice of appeal as a request for a COA on issues not previously certified. *See Kincade v. Sparkman*, 117 F.3d 949, 953 (6th Cir. 1997). The Seventh

---

[6]The circuits have split on the question of whether an improper COA must be vacated. *Compare United States v. Cepero*, 224 F.3d 256, 259-62, 267-68 (3d Cir. 2000) (holding that improvidently granted COA does not vest jurisdiction in appellate court); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997) (treating defective COA as an application for a COA); *Muniz v. Johnson*, 114 F.3d 43, 45 (5th Cir. 1997) (holding that COA that did not specify issues warranting review did not vest jurisdiction in appellate court) *with Soto v. United States*, 185 F.3d 48, 52 (2d Cir. 1999) (defective COA creates appellate jurisdiction); *United States v. Talk*, 158 F.3d 1064, 1068 (10th Cir. 1998) (same); *Young v. United States*, 124 F.3d 794, 799 (7th Cir. 1997) (same). *But see United States v. Harms*, 371 F.3d 1208, 1210 (10th Cir. 2004) (noting in dicta the potential abrogation of *Talk* based on dicta in *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003), that a COA is a "jurisdictional prerequisite").

Circuit often construes a party's briefing of an issue on which no COA was granted to be an implicit request for an expanded COA, which request warrants consideration by the panel. *See Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001). However, as this court has already decided not to grant a COA on the original denial of habeas relief, we decline to expand to the certificate of appealability to encompass the original denial of habeas.[7]

This court thus has jurisdiction only to consider issues raised by the district court's denial of Willis's Rule 60(b) motion. Considering the denial of a Rule 60(b) motion does not normally involve reviewing the merits of the underlying judgment. *See Hood v. Hood*, 59 F.3d 40, 42 (6th Cir. 1995); *Windsor v. U.S. Dep't of Justice*, 740 F.2d 6, 7 (6th Cir. 1984).

### III. Willis's Rule 60(b) Motion

### A. Willis's Motion is Partially A Successive Habeas Application

Some of Willis's original claims are barred in the context of his Rule 60(b) motion. Insofar as Willis's motion can be construed to argue that the Supreme Court's *House* decision changed the law, that *House* shows that the district court resolved his habeas claim improperly, or that newly discovered evidence shows an error in the district court's resolution of an earlier claim, the motion

---

[7]That course would likely be foreclosed in any event. *See Bell v. Thompson*, 545 U.S. 794, 796 (2005) (holding that the Sixth Circuit's withholding of the mandate denying habeas for a capital sentence for five months after Supreme Court denial of certiorari was abuse of discretion); *Calderon v. Thompson*, 523 U.S. 538, 541-42, 558 (1998) (holding that the Ninth Circuit's recall of its mandate denying habeas for a capital sentence after Supreme Court denial of certiorari and two days before the scheduled execution was abuse of discretion); *see also Hohn v. United States*, 524 U.S. 236, 242 (1998) (holding that a COA application "was as much a case in the Court of Appeals as are the other matters decided by it").

is a successive habeas motion that AEDPA would preclude the district court from considering. 28 U.S.C. § 2244(b)(1). Rule 60(b) motions are construed as successive habeas applications insofar as they make a claim for habeas relief on the merits. *Gonzalez v. Crosby*, 545 U.S. 524, 531-32 (2005). Insofar as a 60(b) motion argues that "a subsequent change in substantive law is a 'reason justifying relief'" under Rule 60(b)(6), *id.* at 531, or insofar as it argues that there are grounds entitling the petitioner to habeas corpus relief, *id.* at 532 & n.4, it is a successive habeas application that federal courts may not consider.

But insofar as Willis's motion can be construed to argue that the district court made a mistake in calculating the statute of limitations or in not requiring the state to properly produce the habeas record, his claim goes to the procedural handling of his first habeas petition, and need not be dismissed. AEDPA does not require dismissal "when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Id.* at 532. An argument under Rule 60(b) that "federal courts misapplied the federal statute of limitations" under AEDPA is not a successive habeas application requiring dismissal. *Id.* at 533, 532 n.4.

## B. Willis's Motion is Partially An Untimely 60(b)(1) Motion

Willis explicitly characterized his motion as a Rule 60(b)(6) motion, but it actually fits within multiple subsections of Rule 60(b).[8] Analyzing Willis's motion under the proper subsections of the

---

[8]Relevant portions of Rule 60 provide:
> (b) **Grounds for Relief from a Final Judgment [or] Order. . . .** On motion and just terms, the court may relieve a party . . . from a final

Rule is necessary because pro se filings are "to be liberally construed," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). *See Gonzalez*, 545 U.S. at 527 n.1 ("Although the title [of his motion] . . . suggests that petitioner was relying on [Rule] 59(e), the substance of the motion made clear that petitioner sought relief under Rule 60(b)(6).").

Willis's non-successive arguments are properly classified as motions under Rule 60(b)(1). A 60(b)(6) motion must be based on circumstances not covered by one of the first five clauses, and "strictly legal error" is a "mistake" under 60(b)(1). *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989); *see also Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007) (citing *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)). We have "recognized a claim of legal error as subsumed in the category of mistake under Rule 60(b)(1)." *Pierce v. United Mine Workers of America Welfare and Retirement Fund*, 770 F.2d 449, 451 (6th Cir. 1985) (citing *Barrier v. Beaver*, 712 F.2d 231, 234 (6th Cir. 1983)).

Rule 60(b)(1) motions are supposed to be brought within "a reasonable time . . . no more than a year after the entry of the judgment or order." Fed. R. Civ. P. 60(c)(1). But this Rule 60(b) time limit is an affirmative defense, not a jurisdictional bar. The Federal Rules, in and of themselves, do not alter the jurisdiction of the district court. Fed. R. Civ. P. 82. And the Supreme Court has held that similar "claim-processing rules" are not jurisdictional. *Kontrick v. Ryan*, 540 U.S. 443, 447, 455

---

judgment [or] order . . . for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect; . . . or
> (6) any other reason that justifies relief.

(2004) (a federal bankruptcy rule's time limit was not "jurisdictional"); *see also Eberhart v. United States*, 546 U.S. 12, 13 (2005) (same analysis applicable to a federal criminal rule's time limit). The time limit is a type of affirmative defense to the Rule 60(b) motion on which the other party is entitled to rely if timely raised, but the defense may be forfeited.[9]

In the district court below, the state did not file a response to the Rule 60(b) motion. The district court provided minimal analysis in rejecting Willis's 60(b) motion. Notably, it did not rely on Rule 60's time limits. The main rationale the district court expressed was that Willis "offers only those arguments which it [sic] has made multiple times already." The district court also referred to Willis's raising of issues that it had already considered (though it did not mention AEDPA's bar on second petitions), and it mentioned newly-discovered evidence (though it did not mention AEDPA's requirement that the court of appeals give permission to file a second habeas petition on that ground). It makes the most sense to read the district court's order as rejecting reconsideration of alleged mistakes under Rule 60(b) because it thought it had not made mistakes.

While this court reviews a district court's refusal to grant a Rule 60(b) motion for abuse of discretion, *Stokes*, 475 F.3d at 735, we may reverse a district court's decision not to correct an earlier

---

[9]*But see Marcelli v. Walker*, No. 08-1913, 2009 WL 415998, at *3 (6th Cir. Feb. 19, 2009) (stating that Rule 60(b)(1) time limit is "jurisdictional" without considering applicable Supreme Court precedent); *Mitchell v. Rees*, 261 F. App'x 825, 830 (6th Cir. 2008) (same). Neither case appears to have involved forfeiture or waiver such that it made any difference whether the time limit was "jurisdictional" as opposed to just strictly enforced. Moreover, the only authority *Marcelli* and *Mitchell* cite for the jurisdictional moniker is a Seventh Circuit case that relied without analysis on pre-*Kontrick* precedent and a Sixth Circuit case that holds that under the Rules the district court may not grant an extension of the time to file a 60(b) motion.

mistake because "[a] district court by definition abuses its discretion when it makes an error of law."

*Koon v. United States*, 518 U.S. 81, 100 (1996); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."). Since the district court's entire reason to reject the motion to reconsider appears to rest on an erroneous view on the law, this court may appropriately reverse. While this court normally would affirm the district court's order because Willis's Rule 60(b) motion was untimely, the interests of justice do not require this, particularly in light of the state's forfeiture of that argument.

## C. Michigan Forfeited Its Rule 60(b)(1) Timeliness Defense

Michigan has forfeited any reliance on legal defects in Willis's Rule 60(b) motion by electing to brief this case solely on whether the district court properly dismissed the habeas petition. "Even appellees waive arguments by failing to brief them." *United States v. Ford*, 184 F.3d 566, 578 n.3 (6th Cir. 1999).[10]  For instance, when a habeas petitioner had failed to exhaust administrative remedies as required, we refused to dismiss his petition on that ground because the government did not raise the argument on appeal and therefore waived it. *Urbina v. Thoms*, 270 F.3d 292, 295 n.1 (6th Cir. 2001). And we noted that Ohio had waived arguments about whether certain filings tolled the AEDPA statute of limitations by failing to brief them in *Miller v. Collins*, 305 F.3d 491, 497 (6th

---

[10]*But cf. Leary v. Daeschner*, 228 F.3d 729, 741 n.7 (6th Cir. 2000) (noting that an appellee's failure to respond to the appellant's arguments does not force the appellate court to reverse the district court's judgment).

Cir. 2002). *See also id.* at 496 (noting Ohio's "failure to argue that it will be prejudiced" as a reason to toll the statute of limitations while another filing was pending before state courts).

At oral argument, Michigan claimed that applying the forfeiture rule in this case would be a "harsh" result. But the forfeiture rule is no more harsh to appellees than to the numerous appellants whose arguments this court does not consider after their inadequate briefing. Moreover, the finality rules embodied in Rule 60(b) are themselves "harsh," normally preventing the revisiting of even clearly erroneous judgments. Allowing a prisoner reprieve from finality to correct an earlier erroneous judgment when the state elected not to enforce its interest in finality is not a particularly harsh result, and is unlikely to upset the finality of other settled judgments. Nothing stops the state from choosing to assert appropriate timeliness defenses in similar cases in the future.

Because Michigan elected to brief this case on the merits of the district court's decision to dismiss Willis's habeas petition as untimely, this court can review whether the district court erred in its reasoning in dismissing Willis's petition.

## IV. Willis's Habeas Petition Was, In Part, Timely

Willis's habeas petition was timely, at least insofar as the petition relied on the *Brady* evidence. AEDPA's one-year statute of limitations runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The question disputed in this case is what "due diligence" a petitioner must show when a state's failure to disclose *Brady* evidence leads a petitioner to

discover the evidence after more than a year. In the circumstances of this case, Willis has shown due diligence because he had no reason to know that the state had not disclosed *Brady* evidence.

The palmprint record was *Brady* evidence because at a minimum Willis could have used it to impeach the credibility of the investigating officer who subsequently denied that the record existed. Whether the denial was deliberate or inadvertent, Willis could have used it to cast doubt on the reliability and care taken by the investigating officers who were trying to convict him. And Willis had no way to know that evidence (in the form of a handwritten note on his record) that demonstrated the misstatement even existed until the state disclosed it.[11]

*Brady*'s requirements of disclosure apply to "impeachment evidence as well as exculpatory evidence," apply even if the accused does not ask for the evidence, and apply regardless of the good faith of or even knowledge of the prosecution that police have the evidence. *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999). In *Strickler*, the Supreme Court held that the habeas petitioner had shown cause to excuse procedural default of his *Brady* claim because, where the petitioner had no reason to believe at the time of trial that the state had withheld *Brady* evidence, the petitioner was entitled to rely on the state's duty to disclose. *Id.* at 287.

Michigan's position is that Willis did not exercise "due diligence" because immediately after trial he did not request information the very existence of which the state had improperly withheld in violation of *Brady*. This position is fundamentally at odds with *Brady* itself.

---

[11]In light of the palmprint record's status as impeachment evidence, we do not reach the issue of whether the palmprint record is itself exculpatory evidence under *Brady*.

- 15 -

Willis has consistently argued that his petition was timely filed within a year of discovering the *Brady* evidence. Michigan argues that because it was willing to turn over the evidence after Willis requested it, Willis cannot show that he was unable to discover it within the default limitations period. But this argument assumes that "due diligence" must include immediately asking the state for evidence the existence of which it has already denied. The only authority that Michigan cites for this proposition is one unpublished case. And that case dealt with a petitioner claiming ineffective assistance of counsel rather than a *Brady* violation, and the alleged deficiencies in his counsel's performance could have been discovered much earlier and were not concealed by the state. *See Stokes v. Leonard*, 36 F. App'x 801, 805 (6th Cir. 2002).

Other courts that confronted analogous questions have implicitly held that the statute of limitations begins to run when the petitioner actually discovers the facts underlying the *Brady* claim. Where the prosecution had downplayed the significance of exculpatory testimony it had received from a witness, the Fifth Circuit held that the habeas petitioner's due diligence time period did not begin to run until he actually discovered the witness's testimony, even though the petitioner's attorney declined to follow up on the little he learned from the State before trial. *Starns v. Andrews*, 524 F.3d 612, 614, 619 (5th Cir. 2008). The Seventh Circuit suggested that the due diligence period begins to run for uncovering exculpatory *Brady* evidence after the defendant contacts a witness who cooperates in revealing the state's wrongdoing. *Daniels v. Uchtman*, 421 F.3d 490, 490-91, 492 (7th Cir. 2005). An unpublished Third Circuit opinion noted that "AEDPA's one-year clock did not

begin ticking until the day [the petitioner] received the alleged *Brady* material." *Rinaldi v. Gillis*, 248 F. App'x 371, 380 (3d Cir. 2007).

It is not necessary to decide today whether a state's *Brady* violation should always toll AEDPA's statute of limitations—a state could conceivably violate *Brady* in a way that would be easily discoverable by a duly diligent petitioner. But in the circumstances of this case, Willis was entitled to rely on the state's representation that it did not have impeaching evidence in its files, meaning that due diligence did not require him to request the records before the state turned them over.

It is also not necessary to decide whether Willis has proved all the elements of a *Brady* violation required to warrant habeas relief—Willis and the state can argue on remand about whether the state's eyewitness-based case against Willis was so strong that Willis was not prejudiced by the state's failure to disclose the impeaching material. *See Strickler*, 527 U.S. at 289-97. Whether Willis can show prejudice is not relevant to this court's analysis at this stage of the litigation because the present question is when the AEPDA statute of limitations started running. Because the limitations period did not begin to run until Michigan disclosed the evidence, the district court must consider Willis's habeas claim on the merits.

Insofar as Willis's habeas petition is based on evidence that the state did not disclose until June 1998, the petition was timely filed and should be considered on the merits by the district court.

However, Willis also asserts claims based on earlier FOIA disclosures from the FBI. These claims are time-barred. Disclosures on March 20, 1994, and April 10, 1998, occurred more than year

of counted time before Willis filed his petition. Willis mailed his first state petition for postconviction relief on April 6, 1999, four days shy of a year after the last FOIA disclosure, and Willis used an additional nine days after state proceedings concluded before mailing his federal habeas petition. Thus, claims based on this evidence are time-barred unless the limitations period is equitably tolled. However, the district court properly declined to reconsider its ruling that Willis was not entitled to equitable tolling.

To the extent that Willis argues that actual innocence warrants equitable tolling, his arguments fail because the evidence he presents is merely consistent with innocence, and is not evidence that would demonstrate that no reasonable juror could have voted to convict. *See Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). For instance, a picture of Willis with short hair ten days before the crime does not prove that Willis did not wear a wig and/or false facial hair during the commission of the crime. Jurors may convict based solely on eyewitness identifications even when some evidence suggests a lack of reliability. Likewise, a doctor's opinion that Willis would have been limping at the time of the crime does not prove that observers would have seen him limp, nor would jurors necessarily credit the doctor's opinion. And evidence that Willis had some money at the time of the robbery hardly proves that jurors would not believe he would not have stolen a smaller amount, putting aside the difficulty of how a robber is supposed to know in advance how much money he will successfully steal. Equitable tolling based on "actual innocence" requires more compelling evidence than that which Willis presents.

## IV. Conclusion

For the foregoing reasons, the district court's denial of Willis's Rule 60(b) motion is reversed in part. On remand, the court must consider Willis's habeas petition to the extent that its claims for relief are based on the 1998 disclosure of the palmprint record.