*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0062p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

FLOYD PERKINS,

*Petitioner-Appellant,*

v.

G. MCQUIGGIN,

*Respondent-Appellee.*

No. 09-1875

>

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 08-00139—Robert Holmes Bell, District Judge.

Argued: October 13, 2011

Decided and Filed: March 1, 2012

Before: MOORE and COLE, Circuit Judges; BECKWITH, District Judge.*

_____

**COUNSEL**

**ARGUED:** Allison E. Haedt, JONES DAY, Columbus, Ohio, for Appellant. Mark G. Sands, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Allison E. Haedt, Chad A. Readler, JONES DAY, Columbus, Ohio, for Appellant. Mark G. Sands, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

COLE, J., delivered the opinion of the court, in which MOORE, J., and BECKWITH, D. J., joined. BECKWITH, D. J. (pp. 16–17), delivered a separate concurring opinion.

_____

*The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

1

———————————

**OPINION**

———————————

COLE, Circuit Judge.  Floyd Perkins, the petitioner-appellant, asks this Court to determine whether a credible claim of actual innocence, without more, warrants equitable tolling of AEDPA's statute of limitations.  This Court has previously held that it does, but the Warden asserts that a recent Supreme Court decision places an additional burden upon such prisoners.  Specifically, the Warden argues, that even if a prisoner petitioning for a writ of habeas corpus makes a credible claim of actual innocence, the district court may not assess the merits of the claim unless the prisoner also pursued the writ with reasonable diligence.  Because we find that such a reading would render the concept of equitable tolling nugatory, we REVERSE the judgment of the district court and REMAND for proceedings consistent with this opinion.

## I.  BACKGROUND

On March 4, 1993, Perkins attended a house party in Flint, Michigan, with Damarr Jones and Rodney Henderson.  The three men left the party together, but what happened next is in dispute.  Jones testified that as they walked down a wooded trail towards another house party, Perkins pulled out a knife and began stabbing Henderson.  Perkins maintains that after leaving the party, the three men went to a store to buy alcohol and cigarettes, but that Henderson and Jones left before Perkins finished paying.  He claims that he later saw Jones standing under a streetlight with bloody clothing.  Neither Perkins nor Jones disputes that at some point later in the evening, they arrived at another friend's home to play video games.

A Michigan jury convicted Perkins of fatally stabbing Henderson after hearing Jones testify.  After exhausting his appeals, Perkins's conviction became final on May 5, 1997.  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Perkins needed to file his petition for a writ of habeas corpus by May 5, 1998.  *See* 28 U.S.C. § 2244(d)(1)(A).  He did not.

On June 13, 2008, Perkins filed his petition for a writ of habeas corpus in the district court, raising sufficiency of the evidence, jury instruction, trial procedure, prosecutorial misconduct, and ineffective assistance of counsel claims of error. The magistrate judge recommended the petition be denied as barred by the statute of limitations. Perkins objected, arguing that the petition should be governed by AEDPA's "new evidence" statute of limitations, which extends the statute of limitations to one year from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

In support of this objection, Perkins introduced three previously unpresented affidavits that alluded to his innocence and to the guilt of Jones, the prosecution's eyewitness. An affidavit from Perkins's sister, Ronda Hudson, stated that the affiant heard that Jones had bragged about stabbing Henderson and taking his clothes to the cleaners after the murder. An affidavit from Demond Louis, the younger brother of one of Perkins's friends, stated that Jones admitted, on the night of the murder, to killing Henderson. Louis also noticed Jones wearing orange shoes, orange pants, and a colorful shirt, and that there was blood on his shoes and pants. Finally, an affidavit from Linda Fleming, a dry-cleaning clerk, stated that a man matching Jones's description came in around the date of the murder wanting to know if blood stains could be removed from clothing that matched the description given in Louis's affidavit.

These affidavits were signed on January 30, 1997, March 16, 1999, and July 16, 2002, respectively. AEDPA's "new evidence" statute of limitations expired on July 16, 2003, one year after the last affidavit was signed. Perkins filed the instant petition in 2008, almost five years after the statute of limitations had run. Perkins, drawing upon this Court's precedent, requested that AEDPA's statute of limitations be equitably tolled because he is actually innocent of murdering Henderson. The district court denied the request because Perkins's new evidence was not of the sort needed to pursue an actual innocence claim. "His alleged newly discovered evidence was substantially available to him at trial" and the evidence pointed to the same theory that Perkins had already unsuccessfully argued at trial: that the prosecution's lead witness was framing him.

The district court went further, and found that even if Perkins had put forth the type of evidence that would satisfy the actual innocence standard, he had not pursued his claims with reasonable diligence. Drawing upon the Supreme Court's decision in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the district court determined that a petitioner who seeks to equitably toll a statute of limitations must demonstrate that he has been diligent in pursuing his rights. Perkins, however, waited almost six years after the last affidavit was signed to file his petition in the district court. On June 18, 2009, the district court adopted the magistrate judge's report, denied Perkins's petition for relief, and denied Perkins a certificate of appealability to appeal the judgment to this Court.

Perkins filed a motion requesting a certificate of appealability with this Court on September 14, 2009. On February 24, 2010, this Court, finding that "jurists of reason could debate the district court's conclusion that reasonable diligence is a precondition to relying on actual innocence for purposes of equitable tolling," granted the certificate of appealability request. The certificate of appealability identified this issue alone for review. This appeal followed.

## II. ANALYSIS

The district court's dismissal of a petition for a writ of habeas corpus for failing to comply with 28 U.S.C. § 2244's statute of limitations is reviewed de novo. *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir. 2002). Perkins asserts that the district court improperly assessed his actual innocence claim for purposes of tolling AEDPA's statute of limitations, and that the district court erroneously assumed that a petitioner with a credible claim of actual innocence must additionally prove that he acted with reasonable diligence for such tolling to occur.

*A. Perkins's claim of actual innocence*

For Perkins to have his habeas petition heard on the merits in federal court, he must first persuade the district court that AEDPA's statute of limitations, which has already run, should be equitably tolled in his favor. To do this, he must show that he is factually innocent of killing Henderson, not just that there was insufficient evidence to

convict him. The district court stated that Perkins's delay in filing his petition precluded further review. It also found that Perkins's new evidence was not of the sort needed to pursue a claim of actual innocence, though its analysis on this point was limited to two sentences. We cannot say that the district court's analysis on this issue is a sufficient basis on which to rest our review, such that we need not reach the issue specified in the certificate of appealability.

If a state prisoner's habeas petition is denied in federal district court, "the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b). The certificate of appealability may be issued only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If the district court's denial of habeas relief is on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The certificate of appealability issued to Perkins identified only the issue of whether reasonable diligence is a prerequisite for equitably tolling AEDPA's statute of limitations for review.

Our review of a petitioner's § 2254 motion is limited to those issues specified in the certificate of appealability. *Harris v. Haeberlin*, 526 F.3d 903, 908 n.1 (6th Cir. 2008); s*ee also Willis v. Jones*, 329 F. App'x 7, 12 (6th Cir. 2009) ("[A certificate of appealability] only vests jurisdiction to consider issues specified in the certificate."). Close to half of Perkins's opening brief is dedicated to proving that he is innocent. Perkins asserts that we should consider his actual innocence claim because it is "part and parcel" of his overall tolling claim. *Calvert v. Wilson*, 288 F.3d 823, 838 n.4 (6th Cir. 2002) (Cole, J., concurring). A closer reading of *Calvert* belies this argument. In *Calvert,* we reviewed a claim not expressly granted in the certificate of appealability because the substantive argument, whether the district court's error was harmless, could not be analyzed without assessing whether the respondent waived the argument. *Id.*

("This [certificate of appealability] argument clearly lacks merit, as the propriety of considering harmless error is certainly part and parcel of Calvert's Confrontation Clause claim.").

Perkins asserts, without more, that the merits of the actual innocence claim are probative as to other issues in this appeal. We do not agree. Perkins's innocence has no bearing on the reasonable diligence question, the only question certified by the certificate of appealability. The actual innocence claim is not "part and parcel" of the reasonable diligence question, and only a review of the latter is before us.

*B. Actual innocence as a valid basis for equitable tolling*

AEDPA's statutes of limitation prescribe when state prisoners may apply for writs of habeas corpus in federal court. The statutes of limitation are not jurisdictional, and do not require courts to dismiss claims as soon as the "clock has run." *Day v. McDonough*, 547 U.S. 198, 208 (2006). In *Souter v. Jones*, we held that "where an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying constitutional claims." 395 F.3d 577, 602 (6th Cir. 2005) This "gateway actual innocence claim" does not require the granting of the writ, but instead permits the petitioner to present his original habeas petition as if he had not filed it late. *Id.* at 596.

The Warden asks us to reconsider *Souter*'s holding that actual innocence is a valid basis for equitably tolling AEDPA's statute of limitations in light of the Supreme Court's recent decision in *Holland v. Florida*, 130 S. Ct. 2549 (2010). Sixth Circuit Rule 206(c) requires reported panel opinions to be binding on subsequent panels absent en banc review or when "an inconsistent decision of the United States Supreme Court requires modification of the earlier panel decision." *United States v. Lucido*, 612 F.3d 871, 876 (6th Cir. 2010) (internal quotation marks and citations omitted). A close reading of *Holland* confirms that *Souter* is still binding on this Court.

In *Holland*, the petitioner repeatedly attempted to contact his attorney to ensure that his habeas petition would be filed in time. 130 S. Ct. at 2559. His attorney failed to do so, and the district court and the Eleventh Circuit Court of Appeals both found that "the facts did not warrant equitable tolling and that consequently Holland's petition was untimely." *Id.* Although the petition for certiorari specifically addressed the professional misconduct issue, the Supreme Court could not resolve that issue without first resolving whether the ineffective assistance of the petitioner's attorney warranted equitable tolling of AEDPA's statute of limitations.

The Warden claims that the Supreme Court's decision in *Holland* is the type of inconsistent opinion that justifies revisiting our decision in *Souter*. The Warden asserts that AEDPA's statute of limitations already includes actual innocence claims when two different considerations are taken into account. First, when a new factual predicate for a habeas claim is discovered, the petitioner has an additional year to present his petition, even if the original one year period has run. 28 U.S.C. § 2244(d)(1)(D) ("The limitation period shall run from . . . the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."). Next, claims of actual innocence must be based on "new reliable evidence." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Taken together, the Warden argues that Congress must have contemplated actual innocence claims when it drafted this section.

This argument is unpersuasive. The Supreme Court has repeatedly cautioned against finding that non-jurisdictional federal statutes of limitation *are not* subject to equitable tolling, absent clear congressional command. *Holland*, 130 S. Ct. at 2560. Even if a statute were to suggest that equitable tolling is inapplicable, such statutory implications do not displace the courts' equitable authority; such displacement should only occur when it is clear that Congress intended to do so. *Id.* The inference of congressional intent that the Warden urges is not the sort of "clearest command" that the Supreme Court requires to displace equitable authority. *See Holland*, 130 S. Ct. at 2560-61.

The *Holland* Court identified two instances in which the presumption for equitable tolling has been overcome. *Id.* at 2561 (citing *United States v. Brockamp*, 519 U.S. 347 (1997); *United States v. Beggerly*, 524 U.S. 38 (1998)). In *Brockamp*, taxpayers sought federal tax refunds several years after the Internal Revenue Code's statute of limitations permitted such requests. *Brockamp*, 519 U.S. at 348. The IRC's "unusually emphatic" language that "reiterate[d] its limitations several times in several different ways" made clear that Congress truly did not intend for taxpayers to be able to seek refunds after the applicable period expired. *Id.* at 350-51. In *Beggerly*, a landowner's successor-in-interest sought to quiet title to property after the Quiet Title Act's ("QTA") twelve-year limitation period had run. 524 U.S. at 41-42. The Supreme Court found the nature of the QTA's time period to be "unusually generous" and that landowners needed a firm statute of limitations in quiet title actions. *Id.* at 48-49. None of the concerns the Supreme Court considered in *Brockamp* or *Beggerly*—emphasis in language, generosity of limitations periods, or prejudice to opposing parties—are implicated when considering whether to subject AEDPA's statute of limitations to equitable tolling.

Simply put, nothing in *Holland* calls our analysis in *Souter* into question. "While it is true that Congress included an actual innocence exception to the procedural bars on successive habeas petitions and evidentiary hearings but not to the one-year limitations period, that does not give rise to the negative implication that the absence of an exception was intended." *Souter*, 395 F.3d at 598. Indeed, actual innocence as a basis for equitable tolling of a statute of limitation was firmly part of the post-conviction relief jurisprudence when Congress enacted AEDPA, and there is a presumption that "Congress legislates against the background of existing jurisprudence unless it specifically negates that jurisprudence." *Id.* (citing *Young v. United States*, 535 U.S. 43, 49-50 (2002)). The Warden provides no reason why this presumption should be upset. "[L]ike all 11 Courts of Appeals that have considered the question, [the Supreme Court held] that [AEDPA] is subject to equitable tolling in appropriate cases." *Holland*, 130 S. Ct. at 2560. *Holland* does not indicate that a credible claim of actual innocence is not such an "appropriate" case without a series of illogical inferential leaps.

The majority of other circuits that have considered the actual innocence gateway post-*Holland* agree.[1] *See Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011) (en banc) ("[A] petitioner who makes [a credible showing of actual innocence] may pass through the *Schlup* gateway and have his otherwise time-barred claims heard on the merits."); *Sandoval v. Jones*, 447 F. App'x 1, 4-5 (10th Cir. 2011) ("We recognize, of course, that § 2244(d)'s procedural bar does not extend to preclude this court from entertaining claims of actual innocence."); *San Martin v. McNeil*, 633 F.3d 1257, 1267-68 (11th Cir. 2011) ("A court also may consider an untimely § 2254 petition if, by refusing to consider the petition for untimeliness, the court thereby would endorse a fundamental miscarriage of justice because it would require that an individual who is actually innocent remain imprisoned.") (internal quotation marks omitted). We joined them. *Turner v. Romanowski*, 409 F. App'x 922, 926 (6th Cir. 2011) ("The actual innocence exception allows for equitable tolling if the petitioner presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial.") (internal quotation marks omitted).

The Supreme Court's decision in *Holland* is consistent with our precedent in *Souter*. The Warden cites no language in *Holland* that marks such a departure, and simply rehashes arguments that the respondent made, and that we rejected, in *Souter*. The state's drawing of inferences in both the text of AEDPA and the *Holland* decision runs counter to the Supreme Court's command to hesitate "before interpreting AEDPA's statutory silence as indicating a congressional intent to close courthouse doors that a strong equitable claim would ordinarily keep open." *Holland*, 130 S. Ct. at 2562.

---

[1] The Fifth Circuit held, post-*Holland*, that claims of actual innocence may not toll AEDPA's statute of limitations. *Henderson v. Thaler*, 626 F.3d 773 (5th Cir. 2010). *Henderson*, however, did not address factual innocence, but innocence from a sentence of death. It also did not analyze the question anew in light of the Supreme Court's language in *Holland*. Instead, the *Henderson* court cited to a 2000 case that purportedly held there to be no actual innocence exception. *Id.* at 780 (citing *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000)). *Felder,* however, held that the claim *of the petitioner in that specific case* was not so "rare and exceptional" as to warrant equitable tolling, since "many prisoners maintain they are innocent." *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000). In a footnote, the *Felder* court even stated that "[the petitioner] has not made a *showing* of actual innocence . . . ." *Id.* at 171 n.8 (emphasis in original). The *Felder* court did not go so far as to state that credible claims of actual innocence may *never* equitably toll the statute of limitations. The Fifth Circuit's opinion in *Henderson* at best holds that contesting the applicability of the death penalty as a valid sentence is not a valid basis for equitably tolling AEDPA's statute of limitations.

Ultimately, no language in *Holland* gives us any reason to doubt *Souter*'s continued viability.

## C. *Reasonable diligence as a precondition to relying on actual innocence*

The Warden alternatively argues that *Holland* requires *Souter* to be modified to include a reasonable diligence requirement. In *Holland*, the Supreme Court stated explicitly that "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 2562 (citing *Pace*, 544 U.S. at 418) (internal quotation marks omitted). The Warden argues that even if a credible claim of actual innocence is a valid basis for equitably tolling AEDPA's statutes of limitation, *Holland* dictates placing the additional burden of proving reasonable diligence on such petitioners. But, the Warden's reading conflicts with another strain of Supreme Court jurisprudence in which petitioners who have procedurally defaulted their claims, though not due to a late filing, may have their claims heard by showing, without more, a credible claim of actual innocence. *See House v. Bell*, 547 U.S. 518 (2006) (default due to waiver of substantive claims in state postconviction proceeding); *Schlup*, 513 U.S. 298 (default due to failure to raise substantive claim on appeal of state postconviction motion); s*ee also In re Davis*, 130 S. Ct. 1 (2009) (mem); *Dretke v. Haley*, 541 U.S. 386 (2004).

*Holland*'s language is seemingly at odds with our decision in *Souter* that allows for a petitioner to have AEDPA's one-year statute of limitations equitably tolled upon a credible claim of actual innocence without a showing of reasonable diligence. *Souter*, 395 F.3d at 601 n.16 ("We decline to adopt the approach . . . which imposes a requirement that the petitioner show . . . that a reasonably diligent petitioner could not have discovered these facts in time to file a petition within the period of limitations.") (internal quotation marks and citation omitted). In that same footnote, we went on to state that, "we decline to impose additional requirements upon a petitioner beyond those which the Supreme Court has set forth in its habeas corpus jurisprudence." *Id.* Analyzed together, the Warden contends that we ought to overrule our prior decision in *Souter* pursuant to Rule 206(c), since *Holland* appears to be an inconsistent Supreme

Court opinion on the subject of whether both reasonable diligence and a credible claim of actual innocence must be presented to equitably toll AEDPA's statutes of limitation.

This conclusion is, like much of habeas jurisprudence, not that simple. Requiring reasonable diligence effectively makes the concept of the actual innocence gateway redundant, since petitioners only seek equitable tolling when they were not reasonably diligent in complying with § 2244(d)(1)(D). We made this point clear in *Souter*:

> The requirement [of reasonable diligence] has the effect of reducing actual innocence claims to only those which are timely under § 2244(d)(1)(D), the new evidence provision. That provision states the one-year limitations period begins to run from the date on which the new factual predicate "could have been discovered through the exercise of due diligence." § 2244(d)(1)(D). . . . [This requirement] would not cover situations as in this case where the petitioner had collected sufficient evidence to demonstrate a credible claim of actual innocence but failed to file within the one-year limitations period.

*Id.* All credible claims of actual innocence, per *Schlup*, must be based on new reliable evidence. Such evidence implicates the section quoted above. It is only those claims outside of that one-year period that require equitable tolling.

*Holland* cites *Pace*, 544 U.S. 408, as the basis for its conclusion that "a petitioner is entitled to equitable tolling only if he shows . . . that he has been pursuing his rights diligently . . . ." *Holland*, 130 S. Ct. at 2562 (internal quotation marks omitted). In *Pace*, the Supreme Court decided that the petitioner could not equitably toll AEDPA's statute of limitations because he did not advance "his claims within a reasonable time of their availability" and he sat "on his rights for years" before filing his state post-conviction relief application. *Pace*, 544 U.S. at 419. But, neither *Holland* nor *Pace* involved claims of actual innocence, and so requiring reasonable diligence in those situations does not trigger the internal redundancy we described in *Souter*. In *Pace*, the petitioner requested equitable tolling because "state law and [federal] exhaustion law created a trap . . . ." *Pace*, 544 U.S. at 418. In *Holland*, the claim for equitable tolling centered around attorney error. *Holland*, 130 S. Ct. at 2563. In fact, the Supreme Court

has never required reasonable diligence to be shown when seeking equitable tolling due to actual innocence.

This puts two tracks of Supreme Court jurisprudence in tension with each other. Cases like *Holland* and *Pace* indicate that those seeking equitable tolling must, in general, pursue their claims with reasonable diligence. Cases like *House* and *Bell* consider actual innocence as a gateway to seek review of claims otherwise barred by procedural default, yet do not impose additional requirements. Resolving this tension requires us either to treat all equitable tolling cases the same, regardless of the presence of an actual innocence claim, or to treat all actual innocence claims the same, regardless of the reason for the procedural default. Given the Supreme Court's rich jurisprudence protecting those that may be wrongfully incarcerated, we adopt the latter view. *See, e.g.*, *Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

Adopting the Warden's interpretation of *Holland* would permit an absurd result: petitioners could seek post-conviction review, even if their claim is otherwise procedurally defaulted, if they can make a credible showing of actual innocence and the basis of their default is not the statute of limitations. If the default is based on the statute of limitations, then such petitioners would also need to show reasonable diligence in order to seek review. The Warden makes no argument as to why such disparate standards ought to be applied based on the nature of the procedural default, which makes this interpretation troubling. As we stated in *Souter*, when considering whether actual innocence claims ought to be analyzed in a similar light post-AEDPA, "[a]bsent evidence on Congress's contrary intent, there is no articulable reason for treating habeas claims barred by the federal statute of limitations differently." *Souter*, 395 F.3d at 599. It is unclear why equity permits an actually innocent petitioner to pursue his petition if his default is based on state court exhaustion principles, but that same petitioner could not do so without proving reasonable diligence if the statute of limitations is the basis

of default.  There is little reason to believe that the Supreme Court values statutes of limitations over other procedural bars in this way.  The more natural reading, in line with the Supreme Court's precedent, is that all credible actual innocence claims are treated the same.

Congress passed AEDPA to streamline the federal habeas review process "without undermining basic habeas corpus principles and while seeking to harmonize the new statute with prior law . . . ."  *Holland*, 130 S. Ct. at 2562.  Such prior law ensured that those who are actually innocent should be granted the ability to pursue post-conviction relief regardless of procedural default.  *See Schlup*, 513 U.S. at 325 ("Indeed, concern about the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system."); *Sawyer v. Whitney*, 505 U.S. 333, 351 (1992) (Blackmun, J., concurring) ("[The Supreme Court] consistently has acknowledged that exceptions to these rules of unreviewability must exist to prevent violations of fundamental fairness."); *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) ("Federal courts retain the authority to issue the writ . . . .when a constitutional violation probably has caused the conviction of one innocent of the crime."); *Dugger v. Adams*, 489 U.S. 401, 414 (1989) ("[H]abeas review of a defaulted claim is available, even absent cause for default, if the failure to consider the claim would result in a fundamental miscarriage of justice.") (internal quotation marks omitted).  If AEDPA is truly meant to be in harmony with pre-AEDPA law in those specific situations in which the Supreme Court is silent, it cannot be inferred that the language in *Holland* places an additional burden of proving reasonable diligence on Perkins.

Almost all other circuit courts have not yet analyzed whether, post-*Holland*, reasonable diligence is a prerequisite for equitably tolling AEDPA's statute of limitations based on a credible claim of actual innocence.[2]  Many have come close, and

---

[2]The Third Circuit recently assumed, in dictum, that a petitioner seeking to toll AEDPA's statute of limitations with a credible claim of actual innocence "would still have the burden of demonstrating . . . reasonable diligence in bringing his claim."  *Reed v. Harlow*, 2011 WL 4914869, at \*2 n.2 (3d Cir. Oct. 17, 2011).  In support of this proposition, that court cites to its previous decision in *Miller v. New Jersey State Department of Corrections*, 145 F.3d 616 (3d Cir. 1998).  The petitioner in *Miller*, however, requested equitable tolling because he did not have access to his legal documents, not because he claimed to be innocent.  *Miller* does not mention actual innocence.

they seem mostly to be in agreement.  In *San Martin*, the Eleventh Circuit distinguished between equitable tolling based on reasonable diligence and extraordinary circumstances, and equitable tolling based on actual innocence.  633 F.3d at 1267-68.  While acknowledging that *Holland* required reasonable diligence and extraordinary circumstances in order to equitably toll AEDPA's statute of limitations, it noted that "[a] court also may consider an untimely § 2254 petition if, by refusing to consider the petition for untimeliness, the court thereby would endorse a fundamental miscarriage of justice because it would require that an individual who is actually innocent remain imprisoned."  *Id.* (internal quotation marks omitted).  The Ninth Circuit made a similar distinction.  *Lee*, 653 F.3d at 934 ("As with equitable tolling based on diligence and extraordinary circumstances, we conclude that Congress intended for the actual innocence exception to apply to AEDPA's statute of limitations.") (citations omitted).  The Tenth Circuit went further, stating "[i]n the equitable tolling context . . . a sufficiently supported claim of actual innocence creates an exception to procedural barriers for bringing constitutional claims, regardless of whether the petitioner demonstrated cause for the failure to bring these claims forward earlier." *Lopez v. Trani*, 628 F.3d 1228, 1230-31 (10th Cir. 2010).[3]

### III.  CONCLUSION

Whether Perkins is actually innocent is not for us to decide.  To be sure, the standard that he must meet is a high one, and it is only that "rare and extraordinary case" which merits such relief.  Instead, this Court is tasked with determining whether petitioners who can make a credible showing of actual innocence must *also* make a showing of reasonable diligence in order to equitably toll AEDPA's statute of limitations and have their claim heard on the merits.

---

[3]Because *Lopez* was decided about six months after *Holland*, but fails to cite to *Holland* in the opinion, the weight of this forceful language is somewhat limited.  The Ninth Circuit recently questioned whether the phrase "equitable tolling" adequately describes the relief sought by petitioners like Perkins. *Lee*, 653 F.3d at 933-34 n.5.  "We note that, in many cases, the phrase 'equitable tolling' is used in describing the use of equitable power to allow the untimely filing of a habeas petition in an actual innocence case.  The more accurate characterization is 'equitable exception,' because equitable tolling involves different theoretical underpinnings." *Id.*  Although we have used the phrase "equitable tolling" in cases such as *Souter*, the Ninth Circuit's semantic approach is not without merit, as it may assist courts in distinguishing among different standards for equitable relief.

While a number of courts, including the Supreme Court, have held that equitable tolling requires the petitioner to be reasonably diligent in pursuing his rights, none of those decisions analyze whether equitable tolling based on claims of actual innocence must be pursued in the same way. Given the Supreme Court's rich jurisprudence protecting the rights of the wrongfully incarcerated, petitioners who seek equitable tolling based on actual innocence should not be treated in the same way as those seeking equitable tolling because of ineffective assistance of counsel, confusion of filing requirements, or other important, but less compelling reasons. For the foregoing reasons, the judgment of the district court is REVERSED, and the case is REMANDED so that the district court may fully consider whether Perkins asserts a credible claim of actual innocence.

---

## CONCURRENCE

---

BECKWITH, District Judge, concurring. I write separately to voice a concern that this result not be interpreted to encourage the filing of stale petitions raising dubious claims of actual innocence.

As Justice O'Connor once noted, the principles that inform federal habeas jurisprudence are "finality, federalism, and fairness." *Withrow v. Williams*, 507 U.S. 680, 697 (1993) (concurring in part and dissenting in part). Any equitable exception to the procedural time limits imposed by Congress upon state habeas petitions implicates all three principles. Of course, actual innocence of a crime despite a conviction that has been affirmed on direct review raises fundamental concerns about fairness to the petitioner, and in some cases the integrity of the judicial system. Thus a credible demonstration of actual innocence has traditionally been treated as sufficient, standing alone, to outweigh the interests of finality and federalism. As this Court recognized in *Souter v. Jones*, 395 F.3d 577, 600 (6th Cir. 2005), an exception to timeliness should be made in "... the rare and extraordinary case where a petitioner can demonstrate a credible claim of actual innocence." Indeed, I am of the view that a credible claim of actual innocence functions as a wholly separate and superceding circumstance that acts as an "equitable exception" to the statute of limitations. See *Lee v. Lampert*, 653 F.3d 929, 933 at n.5 (9th Cir.2011) (en banc).

However, federal habeas jurisprudence also demonstrates that such claims are rare, constituting a "narrow class of cases ... implicating a fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 314-315 (1995). *Schlup* held that in order to credibly claim actual innocence, a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the **new** evidence." *Id*. at 327 (emphasis added). Moreover, any such new evidence presented must be **reliable,** whether it consists of "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence ... that was not presented at trial." *Id*. at 324.

Thus a petitioner must present more than an existential possibility of innocence that rests on speculation, or present arguments that simply revisit minor discrepancies in trial testimony or evidence. A petitioner who can present new and reliable evidence of actual innocence under these exacting standards should be entitled to a review of his claims of constitutional error without the untimeliness of his petition standing in the way. The result reached here should not be interpreted in any way to alter or lower these exacting standards.

I also believe that this result does not preclude any and all consideration of the timeliness of a petitioner's presentation of new evidence. The traditional judicial function of evaluating the credibility of witnesses and the quality and reliability of evidence often involves the consideration of when and how the evidence or witnesses came to light or were discovered by a petitioner. I wish to emphasize that nothing in our opinion should be understood to limit or cabin that traditional function.