[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13416
Non-Argument Calendar
_____

D.C. Docket No. 6:14-cv-01072-RBD-KRS

CHRISTOPHER J. WOOD,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 24, 2019)

Before MARCUS, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Christopher Wood—a Florida prisoner serving a 51.75-year sentence for kidnapping, felony battery, sexual battery, and sexual battery by use of great force—appeals the district court's denial of his 28 U.S.C. § 2254 petition. We granted Wood a certificate of appealability on the following issues:

(1) Whether the state court unreasonably applied clearly established federal law when it rejected Mr. Wood's claim that his counsel rendered ineffective assistance by failing to effectively impeach and cross-examine Venera Rodgers, William Rodgers, and Amy Wood;

(2) Whether the state court unreasonably applied clearly established federal law when it rejected Mr. Wood's claim that his counsel's cumulative errors prejudiced him; and

(3) Whether the state court unreasonably applied clearly established federal law when it rejected Mr. Wood's claim that he had newly discovered evidence of juror misconduct.

We address each issue in turn and ultimately affirm the district court's denial of Wood's petition.[1]

**I**

Wood was accused and convicted of taking his wife, Amy Wood, to a secluded place in the woods, where he filmed himself sexually assaulting her in various ways. Amy testified at trial that none of the acts depicted in the video were consensual. Wood argued that the whole encounter was consensual and planned, in order to make a rape/bondage video to sell online so that the couple could earn

---

[1] The state raised the issues of timeliness and exhaustion before the district court, but the district court proceeded to address the merits of Wood's petition. We will do the same.

money to meet their mortgage payment.  After his conviction, Wood unsuccessfully filed several motions for post-conviction relief in state court.  He then filed a federal habeas petition, which the district court denied.  This is his appeal.

## II

When a district court's denial of a 28 U.S.C. § 2254 petition is before us, "we review questions of law and mixed questions of law and fact *de novo*, and findings of fact for clear error."  *Nyland v. Moore*, 216 F.3d 1264, 1266 (11th Cir. 2000) (citation omitted).  A state court's factual findings are presumed correct absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).

Where a state court has adjudicated a claim on the merits, a federal court may grant habeas relief only if the decision of the state court (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).  A state court's decision is "contrary to" federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).  The "unreasonable

3

application" clause permits federal habeas relief if the state court correctly identified the governing legal principle from Supreme Court precedent, "but unreasonably applie[d] that principle to the facts of [the] petitioner's case." *Borden v. Allen*, 646 F.3d 785, 817 (11th Cir. 2011) (quotation mark omitted).

"Importantly, for a federal habeas court to find a state court's application of Supreme Court precedent unreasonable, it is not enough that the state court's adjudication be only incorrect or erroneous; it must have been objectively unreasonable." *Id.* (quotation marks and citations omitted). A state prisoner seeking federal habeas relief "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The Antiterrorism and Effective Death Penalty Act "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation marks and citations omitted). With this framework in mind, we turn to Wood's appeal.

## A

As to the first COA issue, Wood argues that his counsel was ineffective for failing to elicit testimony from his wife, Amy Wood, and her parents, William and

4

Venera Rodgers, that Mr. and Mrs. Rodgers had offered to financially support Amy if she left him and that Amy was scared to divorce him for fear of losing custody of her children.

The Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668 (1984), supplies the applicable federal law for ineffective-assistance-of-counsel claims. *See Premo v. Moore*, 562 U.S. 115, 121 (2011). To make a successful claim of ineffective assistance, a defendant must show both (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. As to the first prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also United States v. Freixas*, 332 F.3d 1314, 1319–20 (11th Cir. 2003) (stating that a defendant must demonstrate that "no competent counsel would have taken the action that his counsel did take" (citation omitted)). As to the second prong, prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Failure to establish either prong of *Strickland* is fatal and makes it unnecessary to consider the other. *Id.* at 697. When analyzing a claim of ineffective assistance under § 2254(d), our review is "doubly" deferential to counsel's performance. *Richter*, 562 U.S. at 105. "[T]he question is not whether counsel's actions were reasonable.

5

The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

As an initial matter, we reject the state's argument that Wood abandoned his claim that his counsel was ineffective for failing to effectively impeach and cross-examine Mr. and Mrs. Rodgers. He argued in his brief that counsel was ineffective as to the impeachment and cross-examination of Amy and her parents; although he focused mainly on Amy, under a liberal construction he also argued his claim as to Mr. and Mrs. Rodgers. We will therefore reach the merits of Wood's claim as to Mr. and Mrs. Rodgers.

Mr. Rodgers admitted on cross-examination that he did not like Wood. On the state's re-direct (outside the presence of the jury), Mr. Rodgers proffered that he did not like Wood for a number of reasons, including that he saw marks on Amy that she had tried to cover up with makeup—testimony that the state trial court warned would have resulted in a mistrial had it been presented to the jury. It was not unreasonable for counsel to steer clear of this testimony after the court's warning and for the state post-conviction court to conclude that Wood was not prejudiced by counsel's failure to elicit further testimony.

As to the cross-examination of Mrs. Rodgers, Wood's counsel also elicited testimony from her that she did not like Wood. Wood contends that the deposition of Mrs. Rodgers—which he seems to suggest should have been used in cross-

6

examining her—shows that Amy's parents offered to financially support Amy and the couple's children on the condition that Amy left Wood. Mrs. Rodgers did testify in her deposition that she offered to help Amy financially if she left Wood; but she also testified that the offer was made years before the incident in question. Mrs. Rodgers' offer to help Amy financially was not close enough in time to show that Amy believed that she still had the option to leave Wood and get financial support, and consequently, Wood cannot show that, but for counsel's failure to elicit that testimony, there is a reasonable probability that he would have been found not guilty. Therefore, the state court did not unreasonably apply *Strickland*.

Finally, as to Amy, the state court did not unreasonably apply *Strickland* when it found that counsel was not ineffective when he failed to question her about any financial motive she had to lie or Wood's past threats to her. Counsel elicited testimony from Amy that she feared losing her children, that Wood had previously threatened to take the children away if she left him, and that the couple had discussed divorce in the past. Counsel wanted to question Amy further to establish her potential motive for fabrication, but after the state argued that the testimony would open the door to uncharged conduct and prior domestic violence and the court warned that any evidence of uncharged conduct would result in a mistrial, counsel made a strategic decision not to pursue that line of questioning. Thus, the state court's determination that counsel made a reasonable decision not to ask

7

additional questions concerning these issues was not contrary to, and did not involve an unreasonable application of, *Strickland*, nor was it based on an unreasonable determination of the facts.

In sum, the district court did not err in finding that the state court did not unreasonably apply clearly established federal law when it rejected Wood's claim that his counsel was ineffective for failing to effectively impeach and cross-examine Amy and her parents. The state court determined that Wood was not prejudiced by counsel's failure to elicit more details from Mr. and Mrs. Rodgers about their dislike of him and that counsel was not deficient for deciding not to further question Amy about the couple's financial problems and domestic violence because the court warned him that he risked a mistrial. Considering the doubly deferential standard under which we review ineffective-assistance claims, Wood has failed to show that the state court unreasonably applied *Strickland*. Accordingly, we affirm in this respect.

## B

As to the second COA issue, Wood argues that counsel's cumulative errors prejudiced him at trial. As an initial matter, Wood raised a number of ineffective-assistance claims in state court, but he has abandoned many of those claims by

8

failing to raise them on appeal.[2]  When reviewing Wood's claim of cumulative error, we consider only the ineffective-assistance claims that Wood raised here.

"The cumulative error doctrine provides that an aggregation of non-reversible errors . . . can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Baker,* 432 F.3d 1189, 1223 (11th Cir. 2005) (quotation marks and citations omitted), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 813 (2006).  We have said that "[w]here there is no error or only a single error, there can be no cumulative error." *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011) (citation omitted).

We have recognized that a cumulative-error claim may not be cognizable in a federal habeas case based on the current state of Supreme Court precedent.  *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 & n.3 (11th Cir. 2012) ("We need not determine today whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or

---

[2] Specifically, on appeal, Wood contends that counsel committed the following errors: (1) counsel failed to object to a sleeping juror, (2) counsel failed to effectively impeach and cross-examine Mr. and Mrs. Rodgers and Amy, (3) counsel failed to know the proper procedure for impeaching a witness, (4) counsel failed to object to the prosecutor's solicitation of false testimony, (5) counsel failed to object to the state's closing argument, (6) counsel failed to obtain Wood's computer from the state, (7) counsel failed to collect prior bondage movies, (8) counsel failed to call the Pogars, and (9) counsel failed to file a motion for new trial.  Consequently, he has abandoned his other claims. *San Martin v. McNeil*, 633 F.3d 1257, 1268 n.9 (11th Cir. 2011).

an unreasonable application of clearly established law."). Although the Supreme Court has not addressed the applicability of the cumulative-error doctrine in the context of ineffective-assistance-of-counsel claims, the Court has held, in the context of an ineffective-assistance claim, that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984) (citations omitted).

Here, the district court did not err in holding that the state court did not unreasonably apply clearly established federal law when it rejected Wood's cumulative-error claim. Wood raised his cumulative-error claim before the state court, and the state court concluded that none of Wood's alleged individual errors amounted to ineffective assistance of counsel. The state court therefore denied Wood's claim of cumulative error by relying on *Parker v. State*, which stated that "where the individual claims of error alleged are . . . without merit, the claim of cumulative error also necessarily fails." 904 So. 2d 370, 380 (Fla. 2005) (citation omitted). As the district court decided, "because [Wood] has not demonstrated any deficient performance or prejudice, his claim of cumulative error fails."[3] In light of *Cronic* and the absence of Supreme Court precedent applying the cumulative

---

[3] In his brief, Wood argues that the district court's conclusion is at odds with its finding that counsel was deficient for 11 of his 18 ineffective-assistance claims. But in fact, the district court did not expressly find counsel deficient for any of Wood's claims.

10

error doctrine to claims of ineffective assistance, the state court's holding is not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, we affirm.

## C

As to the final COA issue, Wood contends that the district court erred in finding that the state court did not unreasonably apply clearly established federal law when it denied his juror-misconduct claim. He argues that newly discovered evidence—in the form of an affidavit-like filing from Jennifer Rowe—showed that two jurors watched news coverage during his trial, obtained extrinsic evidence about his case, and prematurely deliberated his guilt.

The right to a jury trial requires that a criminal defendant receive a fair trial by a panel of impartial jurors. *Turner v. Louisiana*, 379 U.S. 466, 471 (1965). It is clearly established that juror misconduct, including juror contact with extrinsic evidence, is a basis for habeas relief. *Boyd v. Allen*, 592 F.3d 1274, 1305 (11th Cir. 2010). A new trial "is required only if the extrinsic evidence known by the jury posed a reasonable possibility of prejudice to the defendant." *Id.* (citation omitted). The defendant "has the burden of making a colorable showing that the exposure has, in fact, occurred." *United States v. Dortch*, 696 F.3d 1104, 1110 (11th Cir. 2012) (quoting *United States v. Siegelman*, 640 F.3d 1159, 1182 (11th Cir. 2011)). If the defendant "establishes that such exposure [to extrinsic

11

evidence] in fact occurred, prejudice is presumed and the burden shifts to the government to rebut the presumption." *Boyd*, 592 F.3d at 1305 (citations omitted). The government can rebut a presumption of prejudice by showing that the "consideration of extrinsic evidence was harmless to the defendant." *Id.* (citations omitted).

As an initial matter, Wood did not actually submit an affidavit from Rowe, but instead only a letter with a purported notary stamp, which does not comply with the requirements of Florida law.[4] The state court assumed the truth of the alleged affidavit—even though Wood had previously filed an affidavit that was found to be false—and still denied his claim for post-conviction relief on this ground.

The district court did not err in concluding that the state court did not unreasonably apply clearly established federal law when it rejected Wood's claim that he had newly discovered evidence of juror misconduct. The state court found that Rowe's affidavit did not establish that the jurors had actually been watching the news. The affidavit only stated that it "seemed evident to [Rowe] that they had

---

[4] Florida requires that a notary public complete "a jurat or notarial certificate," which has several requirements that are missing from Rowe's purported affidavit. *See* Fla. Stat. § 117.05(4) (requiring that a notary public complete "a jurat or notarial certificate" containing, among other things, "[t]he type of notarial act performed, an oath or an acknowledgment, evidenced by the words 'sworn' or 'acknowledge'"; a statement "[t]hat the signer personally appeared before the notary public at the time of authorization"; and "[t]he specific type of identification the notary public is relying upon in identifying the signer").

12

both been watching the news coverage of the trial." The jurors were also informed throughout the trial that there was extensive news coverage of the case and, therefore, a juror's purported statement that the case was "all over the news" was not surprising and did not establish misconduct. Further, the state court found that the juror's alleged statement to Rowe that the juror's girlfriend had a friend who had obtained the whole story from Amy did not establish misconduct, as the juror did not state that the story was relayed to him by his girlfriend's friend or by his girlfriend.

Neither the state court nor the district court specifically addressed Rowe's statements that she shared facts about Wood's childhood, including that "[Wood] was a little weird as a kid," "[Wood] got caught peeking in my sister Laura's bedroom window," and "[Wood] was always doing stuff like that." But "[u]nder § 2254(d), a habeas court must determine what arguments or theories . . . could have supported the state court's decision." *Richter*, 562 U.S. at 102; *see also Whatley v. Warden*, 927 F.3d 1150, 1182 (11th Cir. 2019) ("[W]e are not limited to the reasons the [state court] gave and instead focus on its 'ultimate conclusion.'" (citation omitted)). There are any number of reasons why the state court ultimately denied Wood's claim, even in light of the statements about his childhood. The state court could have decided that these statements did not sufficiently establish the presumption of prejudice under *Boyd*. The state court also could have

13

concluded that the government had ample evidence—including the hour-and-a-half-long video showing Wood committing the offenses—to show that the jurors' alleged extrinsic contact with Rowe was harmless.  Accordingly, we must give the state court's decision the deference it is due.

Lastly, the state court found that the issue of whether the jurors had been prematurely discussing Wood's guilt was a matter which inhered in the verdict itself and, therefore, juror interviews about this matter were not permissible under Florida law.  *See Reaves v. State*, 826 So. 2d 932, 943 (Fla. 2002) (holding that a juror allegedly "attempt[ing] to discuss guilt prematurely" is a matter that inheres in the verdict).  The state court's factual findings are presumed correct absent clear and convincing evidence to the contrary.  Thus, the state court's denial of Wood's juror-misconduct claim was not contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, we affirm as to this issue.

### III

In conclusion, the district court did not err in determining that the state court did not unreasonably apply clearly established federal law in rejecting Wood's claims that (1) his counsel rendered ineffective assistance for failing to effectively impeach and cross-examine Amy and her parents, Mr. and Mrs. Rodgers; (2) his counsel's cumulative errors prejudiced him; and (3) he had newly discovered evidence of juror misconduct.

14

**AFFIRMED.**